## THE HOLLY SPRINGS SAVINGS AND INSURANCE COMPANY VS. BOARD OF SUPERVISORS OF MARSHALL COUNTY.

1. TAXES: *Privileges. Capital stock. United States securities.*
   Where a tax is imposed upon the capital stock of an incorporated company, regardless of its value, it is a tax upon the privilege of carrying on the business, and is valid and constitutional although the entire capital consists of non-taxable securities. *Aliter*, where the tax is imposed upon the value of the capital stock as property.

2. NON-TAXABILITY OF UNITED STATES SECURITIES: *Temporary and permanent investments.*
   The non-taxability of the bonds and other securities of the federal government constitutes, and was intended to constitute, a large element of their value, and this immunity from taxation will exist, though it constituted the inducement to their purchase and the investment was not intended to be permanent; but where the capital of a banking corporation, used in its daily business, is converted a few days before the day of assessment into such securities for the express purpose of evading taxation, and with the fixed intention of reconverting it as soon as the day of assessment is passed, such investment is colorable and fraudulent, and the capital is liable to taxation.

3. CONSTITUTIONAL LAW: *Inviolability of contracts. Vested rights.*
   By act of 1867 a certain rate of taxation was imposed upon all insurance companies then in existence or thereafter chartered. Thereafter plaintiff in error

was incorporated, and, by formal resolution, accepted the provisions of said act. By a subsequent law the rate of taxation was increased. *Held,* that the first act constituted no part of the charter of plaintiff in error, and could not be made so by their resolution purporting to accept it; that it was a mere declaration of legislative will, repealable at pleasure.

ERROR to the Circuit Court of *Marshall* County.

Hon. ORLANDO DAVIS, Judge.

This was a proceeding, commenced in the supervisors' court of Marshall county, against plaintiff in error, where it was adjudged that it was liable and should pay taxes on $32,000 of the capital stock of the company. From this judgment an appeal was taken to the circuit court, which court affirmed the judgment, and the case comes to this court on a writ of error.

On the trial, F. B. Shuford, cashier, testified that the company was organized in 1869, and had as early as that time bought about $1,000 of non-taxable bonds, in 1870 $3,000, in 1871 $7,000 more, and at least $11,000 of its capital stock since 1871 was represented by said bonds; the reserve fund of the company has been about $10,000, invested in legal-tender notes; the banking-house of the company, $7,000, and was part of the capital stock; the whole capital stock was $59,000, including the non-taxable bonds, the reserve fund, and banking-house; that money was in demand in October, November, and December, in New York, and United States bonds could be cheaply purchased; that in the spring of the year money became abundant and United States bonds appreciated; that in December, 1872, the company invested $32,000, its whole capital stock not represented by the non-taxable bonds and banking-house, and that on the 18th day of January, 1873, the whole capital stock of said bank was invested in and represented by non-taxable bonds, except said banking-house; that in April or May, 1873, the $32,000 of United States bonds were sold in order to provide money to carry on the operations of the bank.

On cross-examination he says that the investment of the

$32,000 in United States bonds was talked of in the board of directors before it was done, and that it was ordered to be done, and one of the main reasons for this was to escape the taxation; that the bank loaned its money at from 12 to 18 per cent. per annum, generally the latter; that he had not furnished a list to the assessor before July 1, 1872 or 1873.

George M. Buchanan testified that he is sheriff of Marshall county; that he made the assessment of the capital stock of the bank in February, 1874; that B. S. Crump was in 1872, and still is, president of said bank; that in October, 1872,. Crump told him (witness) that the company would pay no· more taxes; that it would invest its capital in United States bonds before the 1st of January of each year, and dispose of them after that time, and thus evade the payment of taxes.

It is assigned for error: "The court below erred in affirming the judgment of the said board of supervisors."

*Walter & Scruggs*, for plaintiff in error:

The order of the board of supervisors is unconstitutional and illegal. All the power of the board over taxes and roads· is derived from the legislature, and there is no power to exercise such authority cited. Code of 1871, §§ 1666, 1685; Sioux City *v.* Pacific R. R. Co., 3 Neb., 30.

On January 1, 1873, *all* the property of the company was invested in United States bonds and legal-tender notes, non-taxable. See Chicago *v.* Lunt, 52 Ill., 414; Whitney *v.* City of Madison, 23 Ind., 331; People *v.* Bradley, 39 Ill., 130; Newark City Bk. *v.* Assessor, 1 Vroom (N. J.), 13; Mechanics' Bk. *v.* Bridges, ib., 112; 11 Ind., 570; Bk. of Commerce *v.* City of New York, 2 Black (U. S.), 620; Acts of 1874, p. 50; Acts of 1866, p. 18.

When by statute a railroad company is required to pay a· tax of one-half of one per cent. on the cost of the road, in lieu of all other taxes, it is to be exempt from all other taxes.. State *v.* Hight, 35 N. J. L., 40.

In Humphreys *v.* Pegness, 11 Wall., 244, the court held that.

·the legislature has the power to bind the state in relinquishing its power to tax a corporation, and also that such a provision in the act of incorporation constitutes a contract, which the ·state may not subsequently impair.    Jefferson Bk. *v.* Skelley, 1 Beach, 436 ; Providence Bk. *v.* Gilling, 4 Pet., 514 ; The Binghampton Bridge, 3 Wall., 51 ; Dartmouth College *v.* Woodward, 4 Wheat., 518 ; Wilmington R. R. Co. *v.* Reid, 13 Wall., 264.

As to the charter of the company, see So. R. R. Co. *v.* Mayor and Aldermen of Jackson, 38 Miss., 335.

*Featherston, Harris & Watson,* for defendant in error :

The only testimony in the case is that of the cashier of the plaintiff in error and the sheriff, and the only question really involved is whether the company has a right to invest its money in non-taxable bonds, for the sole and avowed purpose ·of evading the payment of taxes, thereby defrauding the revenue.    The company failed to give a list of its property, or amount of its capital stock, before the 1st of July, 1873, to the assessor, as required by the Code of 1871, § 1683.

The sheriff made the assessment under Code of 1871, § 1693. That it was subject to the tax, see Code, 1871, § 1682.    The board adjudged the assessment at $32,000, and that a tax thereon should be paid.

The act incorporating the company is silent on the subject ·of taxes.    Acts of ·1867, pp. 76, 77, 78.

The taxing power of the government is vested in the legislature.    It may and does increase and diminish the taxes, and sometimes it relieves certain species of property from the burden· of taxation.

The enormity of the attempted fraud renders the case unusual.

The case of Mitchell *v.* The Commissioners of Leavenworth County, decided by the Supreme Court of the United States, · October, 1875, is conclusive of this case.    Cent. Law Jour. ·of February 11, 1876, p. 102.

Chalmers, J., delivered the opinion of the court.

The Holly Springs Savings and Insurance Company seeks to escape payment of taxation on $32,000 of its capital stock upon the ground that the same was, on 1st of January, 1873, invested wholly in United States treasury notes and bonds, which are non-taxable. By the law then in force taxes were to be assessed upon all property subject to taxation held by the owner on the 1st day of January preceding the assessment. It seems in the case at bar to have been established, to the satisfaction of the board of supervisors, and of the circuit court on appeal, and to our own satisfaction, that the investment in the government securities was made by the savings institution a few days before the 1st day of January, for the express purpose of avoiding taxation, and that these securities were, a few days after the 1st day of January, reconverted into current funds, and reëmbarked in the business of the concern, to wit, the buying and selling of exchange, the discounting of notes, and the other usual transactions of such institutions. The question presented is, therefore, whether a banking institution can avoid taxation by an investment of its means in the non-taxable securities of the government, where it is admitted and satisfactorily established that such investment was neither intended to be permanent nor to continue until the interest or the will of its managers should dictate a change, but with the sole intention of escaping taxation, and with the predetermined purpose of reconverting its means as soon as practicable after the day of assessment.

It is perhaps possible that the case at bar may be made to rest upon narrower grounds, and can be disposed of without settling the main question presented by the record.

If the tax imposed by the statute can be considered as in the nature of a privilege tax, or as a royalty upon the franchise, it may be held valid, regardless of the fact that it is imposed upon the capital stock rather than upon the privilege *eo nomine*, and regardless also of the fact that this capital stock consists of government securities.

It was held in Bank of Commerce *v.* New York City, 2 Black (U. S.), 620, that the capital of a bank, invested in government securities, was not liable to state taxation because, by the law imposing the duty, the same was imposed not upon the capital specifically as such, but upon the value thereof as property. The court, after alluding to the fact that by a previous law of the state the taxation had been upon the amount of nominal capital, without regard to loss or depreciation therein, proceed to say : "According to that sytem, it was immaterial as to the character or description of property which constituted the capital, as the tax imposed was wholly irrespective of it. The tax was like one annexed to the franchise as a royalty for the grant. But since the change of this system it is agreed the tax is upon the property constituting the capital." Bank of Commerce *v.* New York City, *supra.*

By § 1683 of the Code it is provided that "the president or cashier of any bank in this state, or other joint stock company, the capital stock of which is taxable, shall, on or before the 1st day of July in every year, deliver to the assessor of the county in which the bank or company is located a written statement, under oath, of the capital stock paid in, except such as is held by the state, or otherwise not liable to be taxed, and on failure to furnish such statement the tax shall be assessed on the whole capital authorized by the charter."

If this clause stood alone we should feel no hesitation in saying that the tax is imposed upon the capital stock paid in, without regard to its value at the date of assessment, and, consequently, as a burden upon the franchise; and that, therefore, upon the authority of the Supreme Court of the United States, *supra*, such taxation was valid, although, in point of fact, the whole capital stock might consist of non-taxable securities.

By § 1663 of the Code, however, which fixes the rate of taxation, the same is declared to be levied "on the value" of all real and personal property, enumerating, among other things, "bonds and stock in incorporated companies." It is

possible that this clause relates solely to the private holders of stocks in incorporated companies, and that, so far as the bank itself is concerned, the imposition of the tax is intended by § 1683 to be in the nature of a tax upon the privilege of banking. If so, it is as we have seen valid, though the entire assets of the concern consist, honestly and in good faith, of the securities of the national government. Under the views which we take of the facts of this case, and of the law arising thereon, it is not necessary to decide this question.

Addressing ourselves to the main question in the case, as herein above stated, we think that the court below did not err in holding the capital stock of plaintiff in error to be taxable under the state of facts disclosed by the record. As before remarked, it was made satisfactorily to appear that the means of the institution were invested in government securities a few days prior to the 1st of January, and were reconverted a few days thereafter; that this reconversion was contemplated and fully intended at the time of the purchase of the bonds and treasury notes, and that the entire transaction was initiated and carried through for the express and avowed purpose of escaping the burden of taxation. The president of the institution, when compelled the year previous to pay taxes upon the capital invested in its business, declared to the tax collector, that he would pay such burdens no longer, and that he would avoid doing so in future by an investment of its means in government securities a few days prior to the each succeeding day of assessment.

The cashier testified that he made the investment by order of the directory, and that the main argument used in the board for making the order was to escape taxation.

In the case of Mitchell v. The Commissioners of Leavenworth County, on appeal from the supreme court of Kansas, it was held by the Supreme Court of the United States, in a case strikingly similar to the one at bar, that, where the taxpayer was seeking to enjoin the sale of his property for unpaid taxes, a court of equity would refuse its relief to him because

of the fact that his investment in government securities had been temporary, and with the express purpose of avoiding the burdens of taxation.   Chief Justice Waite, following the opinion of the Kansas court, held that a court of chancery would not lend its sanction and aid to a scheme so improper and fraudulent in its character, and he therefore remitted the complainant to his legal rights, if any he had.   Cent. Law Jour., February 11, 1876, p. 102.   We think that the learned chief justice and our Kansas brethren might well have gone further, and declared that a party cannot in this manner acquire rights which a court, either of law or of equity, will enforce.

It is argued that the savings institution was only bound by law to make out and deliver a list " of all taxable property of which it was possessed on the 1st day of January preceding," and that if on said day it was possessed of no property taxable by law, it cannot be made to pay taxes, and that the state cannot inquire by what means it dispossessed itself of the property, or what are its intentions with regard to repossessing itself of it.   There are, we think, two satisfactory answers to this reasoning.   In the first place, it proceeds upon a too literal interpretation of the statute ; and, in the second place, it overlooks the principle that fraud vitiates everything into which it enters, and nullifies the advantages which fair dealing would have conferred.   When the state imposes the burden of taxation upon the property possessed by the citizen, it means both that of which he is the open holder and that which he has secreted and concealed.   His cunning may in practice defeat the imposition upon the latter, but it is legally no less liable to the burden, and, when discovered, the duty will be exacted, no matter what the shifts and devices which may have been resorted to in order to escape.

That a party can derive no advantage in any court from a fraud, confessed or exposed, may be considered axiomatic. Shall the state alone be debarred from asserting against a fraudulent taxpayer this wholesome principle which protects

the rights of the private litigant? Was not the conduct of plaintiff in error in the case at bar a palpable fraud upon the revenue of the state, and is the state powerless to guard against it?

It is shown by the proof that the savings institution has embarked in its business $32,000, which it keeps constantly employed at a profit throughout the year of 12 to 18 per cent. For a few days it invests these means in government securities, and claims thereby to escape taxation for the whole year, confessing at the same time that this momentary investment was made with no other view than that of escaping its duty of contributing to the support of the state government. That such conduct is a fraud in fact, as well as in intention, seems too plain for argument.

It is urged, however, that the non-taxability of the national securities is guaranteed by the federal government; that their exemption from taxation constitutes one of the main ingredients of their value, and that this cannot be infringed by the state, no matter what are the circumstances under which they are held.

This is freely conceded, as a general proposition, and yet it is not believed to affect the question involved, because there still remains power in the courts to investigate whether the holding is actual and *bona fide*, or colorable only, and fraudulent. If held in the latter aspect, and as a mere representation of property temporarily concealed, which is to be uncloaked as soon as the visit of the tax assessor shall have been made, the courts will look through the sham, and measure the rights of the parties by the real nature of the transaction.

We must not be understood as holding that government bonds are taxable merely because the motive for their purchase was to escape taxation. Neither do we intimate that they must be held for any particular time, or be bought with any intention of holding them for any period whatever. They may be bought solely because of their non-taxable character and disposed of at the very earliest practicable moment, and

19

such purchase will not subject them to taxation. We confine ourselves to the point at issue, and limit our decision to the facts before us; and we declare that when the capital of a banking institution, used throughout the year in the conduct of its business, is converted for a few days into government securities, for the express purpose of defeating the imposition of any or all taxes, such investment is colorable and fraudulent, and its capital remains taxable to the same extent and in the same manner as if such conversion had never taken place. In such case the tenure by which they are held, being a fraud and a cheat, will be disregarded, and the bankers will be considered as still the owners of that property which, for the moment, they have attempted to hide beneath the protection of the general government. If this construction of the law be not the true one, then the bankers of the country, by a judicious shifting of these securities from city to city and from state to state, so as to meet in each the day of assessment, may enormously multiply their exempting quality, and thereby escape in the aggregate the burdens of taxation upon property to an amount infinitely beyond the total sum of these securities in existence. We cannot think that such was the intention or desire of the federal government, or that the states are powerless to protect themselves against such a scheme.

We regret that we have been forced to decide this important question without the benefit of any adjudications upon the subject elsewhere. We have followed, in our reasoning, what seemed to us the dictates of reason and sound morality, and we believe that our conclusions are supported by the suggestions of both.

The claim upon the part of the plaintiff in error that, if liable to taxation at all, no more than three-tenths of one per cent. can be assessed against it, because at the date of its organization that was the rate of taxation on savings institutions provided by law (Acts of 1866–7, p. 18), is destitute of merit. This was a rate of taxation prescribed by one legislature, which any succeeding legislature was at liberty to alter.

It was not by its terms made a part of the charter of any savings institution, either then in existence or thereafter to be organized. It possessed none of the features of a contract, and could not be made to assume that character by the idle ceremony which the directory of plaintiff in error went through in formally accepting its provisions. Christ Church *v.* County of Philadelphia, 24 How., 301; Tucker *v.* Ferguson, 22 Wall., 574.

The judgment is affirmed.