*In re* APPEAL PEOPLE'S BANK OF VERMONT, ILLINOIS.

*Opinion filed June 16, 1903.*

TAXES—*power of board of review to assess money invested by bank in government bonds.* Money invested by a bank in United States bonds for the purpose of evading taxation, the bonds being left on special deposit with a distant bank and sold soon after the first of April, may be assessed for taxation by the board of review.

CARTWRIGHT, BOGGS and HAND, JJ., dissenting.

APPEAL from board of review of Fulton county.

HARRY M. WAGGONER, for appellant:

Any person has a right to exchange money on deposit in a bank for bonds of the United States at any time, even if the express purpose in the transaction was to exchange money which was taxable for bonds which were not taxable. *Stillwell* v. *Corwin,* 55 Ind. 434.

H. J. HAMLIN, Attorney General, (E. B. SMITH, B. D. MONROE, and GEORGE B. GILLESPIE, of counsel,) for the board of review:

Upon bill to restrain the collection of a tax assessed against government securities primarily exempt from taxation but in which the complainant has temporarily invested his money or property subject to taxation for the purpose of evading taxation, such investment is fraudulent as against the State or municipality entitled to the taxes, and a court of equity will not lend its aid to the fraudulent purpose. 25 Am. & Eng. Ency. of Law, 108; *Mitchell* v. *Leavenworth County,* 9 Kan. 344; *Ogden* v. *Walker,* 59 Ind. 460; *Shotwell* v. *Moore,* 129 U. S. 590; *State* v. *Assessor,* 37 La. Ann. 850; *Griffin* v. *Heard,* 78 Tex. 607.

Mr. JUSTICE RICKS delivered the opinion of the court:

This is an appeal by the People's Bank of Vermont, Illinois, from a decision of the board of review of Fulton county, Illinois.

The facts, as shown by the record, are substantially as follows:  In the latter part of March, 1901, the People's Bank of Vermont, through its president, Robert Dilworth, purchased $26,562 worth of United States two per cent bonds and sold them during the first part of April following, and on the fourth day of May, 1901, made the following schedule of property for the assessor:  First, money on hand or in transit, $4245; second, funds in the hands of others, banks, bankers, brokers and others, subject to draft, $7731; third, the amount of checks or other cash items, the amount thereof not being included in either of the preceding items, ......; fourth, the amount of bills receivable, discounted or purchased, and other credits due or to become due, including accounts receivable and interest accrued but not due and interest due and unpaid, $194,448; fifth, the amount of bonds and stock of every kind, and shares of capital stock of joint stock or other companies or corporations held as an investment or in any way representing assets, $26,562; sixth, all other property appertaining to said business, other than real estate, etc., ......; seventh, the amount of all deposits made with them by other parties, $207,904; eighth, the amount of all accounts payable, other than current deposit accounts, ......; ninth, the amount of bonds or other securities exempt by law from taxation, specifying the amount and kind of each, the same being included in the preceding fifth item, United States two per cent bonds, $26,562.  The schedule was subscribed and sworn to by Robert Dilworth, president.  On August 6, 1901, Robert Dilworth, president of said bank, was notified by the board of review to appear before the same, which he did, and was asked the following question: "Did you buy government bonds late in March, 1901, and sell them early in April, 1901, for the express purpose of evading the tax on money invested in said bonds?" which question he declined to answer, but did state, "I did it to save taxes, because they were not subject to taxation, as I

thought." The record further shows that the said bonds were on special deposit with the Merchants' Loan and Trust Company of Chicago, Illinois, and that the People's Bank of Vermont never had them in its possession. The board of review found, as a matter of fact, that the purchase of the bonds by this bank was not a transaction in pursuance of the business of banking, but was for the purpose of avoiding taxation, and accordingly assessed said bank with the amount of money invested in said bonds.

The only question before this court for determination is as to whether the board of review had the power and was authorized, under the circumstances, to make the additional assessment. Appellant insists that it was the owner of the bonds on the first day of April, 1901, and listed the same to the local assessor, as required by law, and that, inasmuch as government bonds are not taxable, the board of review did not have the power to assess it with the amount of money invested in said bonds. The only authority cited in behalf of appellant is the case of *Stillwell* v. *Corwin*, 55 Ind. 434, which was a suit upon a certain instrument in writing by which a bank deposit was turned into a special deposit receipt for safe keeping of United States government bonds, the bonds to be returned to the depositor when called for. The defense sought to be interposed was, that the arrangement between the depositor and the bank was for the purpose of avoiding taxation, and that in consequence the instrument sued on was void, as against public policy. On demurrer, and answer setting up this defense, the court held that the answer did not contain a legal defense, and in reasoning in support of the holding used the following language: "Any person has a right to exchange money on deposit in a bank for bonds of the United States at any time, even if the express purpose in the transaction was to exchange money which was taxable for bonds which were not taxable. * * * The money given for

the bonds was taxable for the year 1866, either in the hands of the Stillwells or in the hands of Makepeace. The revenue, therefore, was not defrauded." The Supreme Court of Indiana, however, in the later case of *Ogden* v. *Walker*, 59 Ind. 464, which was a bill for an injunction to restrain the collection of taxes extended against the complainant upon government bonds, after reviewing the decision in the case of *Stillwell* v. *Corwin*, *supra*, said: "If, however, the party who makes such exchange for bonds for the express purpose of avoiding taxation on money or property otherwise taxable, should be assessed with such bonds for the purpose of taxation, it may well be doubted if a court of equity would enjoin the collection of any taxes assessed on such bonds."

It has been repeatedly held that one who invests his money in United States notes could not restrain the collection of taxes extended against the amount invested, and money which is temporarily invested in securities for the purpose of evading taxation is not exempt, and is fraudulent against the State or municipality entitled to the tax, and a court of equity will not, in such case, lend its aid to the fraudulent purpose. *Shotwell* v. *Moore*, 129 U. S. 590.

The case of *Holly Springs Savings and Insurance Co.* v. *Supervisors of Marshall County*, 52 Miss. 281, (24 Am. Rep. 668,) was an action against the Holly Springs Savings and Insurance Company to recover a tax on the capital stock of such company, and the defense was, that at the time when the taxes were assessed the capital stock of said company was all invested in United States bonds, which were not taxable. The law required the company to make out and deliver a list "of all taxable property of which it was possessed on the first day of January preceding." It appeared in evidence that the company, in December, 1872, invested all its capital stock, besides real estate, in United States bonds, and that on the 18th day of January the bonds were sold and the capital re-

converted into money.   This was done for the admitted
purpose of escaping taxation.   In considering this case
the court said: "The question presented is, therefore,
whether a banking institution can avoid taxation by an
investment of its means in the non-taxable securities of
the government, where it is admitted and satisfactorily
established that such investment was neither intended
to be permanent nor to continue until the interest or the
will of its managers should dictate a change, but with
the sole intention of escaping taxation, and with the pre-
determined purpose of re-converting its means as soon
as practicable after the day of assessment.  *  *  *  Ad-
dressing ourselves to the main question in the case, as
herein above stated, we think that the court below did
not err in holding the capital stock of the plaintiff in
error to be taxable, under the state of facts disclosed by
the record.   As before remarked, it was made satisfac-
torily to appear that the means of the institution were
invested in government securities a few days prior to the
first of January and were re-converted a few days there-
after; that this re-conversion was contemplated and fully
intended at the time of the purchase of the bonds and
treasury notes, and that the entire transaction was initi-
ated and carried through for the express and avowed pur-
pose of escaping the burden of taxation.  *  *  *  When
the State imposes the burden of taxation upon the prop-
erty possessed by the citizen, it means both that of which
he is the open holder and that which he has secreted and
concealed.   His cunning may, in practice, defeat the im-
position upon the latter, but it is legally no less liable
to the burden, and, when discovered, the duty will be ex-
acted, no matter what the shifts and devices which may
have been resorted to in order to escape.   That a party
can derive no advantage in any court from a fraud, con-
fessed or exposed, may be considered axiomatic.  *  *  *
We declare that when the capital of a banking insti-
tution, used throughout the year in the conduct of its

business, is converted for a few days into government securities for the express purpose of defeating the imposition of any or all taxes, such investment is colorable and fraudulent, and its capital remains taxable to the same extent and in the same manner as if such conversion had never taken place.  In such case the tenure by which they are held, being a fraud and a cheat, will be disregarded, and the bankers will be considered as still the owners of that property which, for the moment, they have attempted to hide beneath the protection of the general government.  If this construction of the law be not the true one, then the bankers of the country, by a judicious shifting of these securities from city to city and from State to State, so as to meet in each the day of assessment, may enormously multiply their exempting quality, and thereby escape, in the aggregate, the burdens of taxation upon property to an amount infinitely beyond the total sum of these securities in existence. We cannot think that such was the intention or desire of the Federal government, or that the States are powerless to protect themselves against such a scheme."

While this case comes under a new statutory provision on appeal from the board of review, and being different in manner of obtaining jurisdiction, we can see no reason why the same rule should not apply as does to other statutes with reference to the same thing.  The president of the bank in effect admitted that the bonds were purchased for the purpose of evading taxation, and the circumstances tend most strongly to establish that such was the fact and purpose.  This was a banking institution, and if it was the mere question of the safe keeping of these bonds and the transaction was an investment for the benefit of profits to the banking concern, there could be no good reason for leaving them upon special deposit in some bank distant from the situs of taxation. We may not be warranted, from the evidence, in saying that such was the fact, but it may be easily seen that

the bonds in question, lying in the hands of the convenient depository, may have subserved the same purpose for many like banking institutions, and thus repeatedly defrauded the State and municipalities of their proper taxes. While such institutions have the right to invest in such securities, and courts are bound to recognize that right, when it becomes a question between them and the State, and that question relates to the purpose of the purchase, and the facts tend to show that such purpose was the evasion of taxation, then the courts may look upon such transaction as none other than fraudulent in law, and of such character that the beneficiaries can not be allowed, under the cloak of an apparent legitimate transaction, to thus avoid their duty and responsibility to the State.

The action of the board of review was warranted and the decision is approved.    *Decision approved.*

CARTWRIGHT, BOGGS and HAND, JJ., dissenting.