[L. A. No. 8449. In Bank.—September 30, 1926.]

WHITING FINANCE COMPANY (a Corporation), Appellant, v. ED. W. HOPKINS, Assessor, etc., et al., Respondents.

[1] CONTRACTS—SALE OF AUTOMOBILES—SOLVENT CREDITS—TAXATION. A contract for the sale and purchase of an automobile whereby the purchase price is payable in certain installments at specified times, the seller retaining title until full payment, the purchaser being given immediate possession of the property and the right to retain the same as long as he complies with the contract, but in the event of his violation of the same the seller having a right to retake the property, in which event, however, the seller being given the right to enforce full payment of the unperformed obligations of the purchaser, constitutes a solvent credit which is subject to taxation under the constitution and law of this state.

[2] ID.—CREDITS—CHARACTER OF CONTRACT.—There is no real distinction between a credit owned by a creditor, evidenced by a promissory note and having as its security a pledge of personal property and an equally unqualified credit evidenced by an absolute obligation of a would-be purchaser of personal property and having for its security the property purchased, delivered to and held by him, subject only to be repossessed by the seller in the event of the debtor's violation of his obligation; and the fact that the seller holds the naked title to the property with such qualified right of repossession does not render the transaction other than one whereby an unqualified credit is created and secured by the property of which it constitues the purchase price.

[3] TAXATION — MONEY IN BANK — EVASION.—Where a corporation opens a savings account in a bank, deposits therein one dollar and on the first day of March negotiates a loan of a large amount from the commercial department of the same bank and deposits the same on the same day in said savings account, and seven days

---

1. Taxation of conditional sale contract, note, 12 A. L. R. 566. See, also, 24 Cal. Jur. 81; 26 R. C. L. 138.

after the deposit withdraws from its said savings account the whole of said sum and repays said loan, the board of equalization of the county, upon an investigation of the facts, is justified in holding under the provisions of section 3673 of the Political Code that the transactions in question was undertaken for the purpose of evading taxation, and it has the power under section 3681 of the Political Code to order the assessment of the taxpayer raised so as to make it conform to the true value of its assessable property.

[4] ID.—BOARD OF EQUALIZATION—POWER TO INVESTIGATE.—Boards of equalization have full power to inquire into such transactions with a view to preventing the evasion of taxation by individuals or corporations.

[5] ID.—SESSIONS OF BOARDS OF EQUALIZATION—TIME.—The provisions of the Political Code with reference to the power of a board of equalization to continue in session after the date fixed for the completion of its investigations under said sections are directory, in the absence of a clear intent on the part of the legislature to the contrary, and the action of such a board in raising an assessment on a date subsequent to the time within which it is required to act under the provisions of section 3672 of the Political Code is not illegal.

(1) 37 Cyc., p. 820, n. 82.    (2) 37 Cyc., p. 820, n. 82.    (3) 37 Cyc., p. 1092, n. 65.    (4) 37 Cyc., p. 1087, n. 45.    (5) 37 Cyc., p. 1077, n. 77.

APPEAL from a judgment of the Superior Court of Los Angeles County. Victor R. McLucas, Judge. Affirmed.

The facts are stated in the opinion of the court.

Loewenthal, Collins & Loewenthal for Appellant.

Edward T. Bishop and Edward W. Mattoon, County Counsel, J. A. Tucker, Chief Deputy County Counsel, and Jess E. Stephens, City Attorney, for Respondents.

RICHARDS, J.—This action is one wherein the plaintiff seeks to recover from the defendants in their respective official capacities certain moneys paid as taxes under protest upon property of said plaintiff which it asserts to have been

4.    See 24 Cal. Jur. 228.
5.    See 24 Cal. Jur. 226.

not subject to the taxes imposed and collected. The trial court upheld as legal the imposition of said taxes and from its judgment to that effect the plaintiff prosecutes this appeal. The cause comes before us upon an agreed statement of facts from which it appears that there were two separate levies of taxes to which the plaintiff and appellant objected and the amount of each of which he was required to pay and did pay under protest. The first of these relates to the imposition by the defendant Ed. W. Hopkins, as county assessor of the county of Los Angeles and also as city assessor of the city of Los Angeles, of an assessment upon certain alleged solvent credits of which the plaintiff was the owner and in possession on the first Monday in March, 1923, and consisting of certain conditional sales contracts for the disposition of motor vehicles to various purchasers, the aggregate cash value of which was on said date the sum of $291,867.14, the stipulation of facts showing that said motor vehicles were on said date assessed to the respective purchasers thereof and that the tax so levied and assessed thereon was paid respectively by said purchasers. The form of the conditional sales contracts thus sought to be subjected to taxation was set forth in said stipulation and was and is the usual and ordinary form of such contracts used by the trade in the sale of motor vehicles. It may be stated generally as to said agreed form of contract that by its terms the purchaser of the specified motor vehicle agreed to purchase and the seller thereof to sell the described vehicle for the agreed purchase price, which sum the purchaser agreed to pay in certain installments at specified times, the contract providing that until the purchaser had fully complied with the terms, covenants and conditions of said contract to be by him performed and made all of the payments as therein provided, the said personal property should belong to and the title thereto remain in the seller; the purchaser to be given the immediate possession of said personal property and to have the right to retain the same so long as he was engaged in complying with his obligation under said contract; but in the event of the violation thereof by him the seller retained the full right to retake possession of said property and thereupon the right of the purchaser therein should cease; the seller, however, being given the right to enforce full payment of the unperformed obligations of said contract

against the purchaser, notwithstanding the retaking by the seller of said property in consequence of the purchaser's breach thereof. The contracts in question had been transferred to the plaintiff by numerous so-called "sellers" or dealers in motor vehicles in its capacity as a "finance corporation organized to facilitate the business of selling motor vehicles on credit by financing such transactions. It was the aggregate amount of such contracts in the hands of the plaintiff as such transferee thereof on the first Monday in March, 1923, which were sought to be subjected to taxation as "solvent credits" by the defendants herein in their aforesaid official capacities, and the question presented to us upon the first phase of this appeal is as to whether said contracts are such solvent credits within the meaning of the constitution and laws of this state as to be subject to taxation.

The constitution, in article XIII, section 1, thereof, provides:

"All property in the state except as otherwise in this constitution provided, not exempt under the laws of the United States, shall be taxed in proportion to its value, to be ascertained as provided by law, or as hereinafter provided. The word 'property,' as used in this article and section, is hereby declared to include moneys, credits, bonds, stocks, dues, franchises, and all other matters and things, real, personal and mixed, capable of private ownership; provided, that a mortgage, deed of trust, contract, or other obligation by which a debt is secured when land is pledged as security for the payment thereof, together with the money represented by such debt, shall not be considered property subject to taxation."

The Political Code, in section 3607 thereof, provides as follows:

"Property subject to taxation. All property in this state, except as otherwise provided in the constitution of this state, is subject to taxation. Nothing in this code shall be construed to require or permit double taxation."

Section 3617 of the Political Code, in subdivision 1 thereof, further provides:

"The term 'property' includes moneys, credits, bonds (except railroad or quasi-public corporation), stocks, dues, franchises, and all other matters and interests, real, personal, and mixed, capable of private ownership."

Subdivision 6 of said section 3617 further provides:

"The term 'credits' means those solvent debts, not secured by mortgage or trust deed, owing to the person, firm, corporation, or association assessed. The term 'debt' means those unsecured liabilities owing by the person, firm, corporation, or association assessed to *bona fide* residents of this state, or firms, associations or corporations doing business therein; but credits, claims, debts, and demands due, owing or accruing for or on account of money deposited with savings and loan corporations or with building and loan associations, shall, for the purpose of taxation be deemed and treated as an interest in the property of such corporation, and shall not be assessed to the creditor or owner thereof."

[1] At the threshold of our consideration of the question as to whether the contracts involved in the issue herein are "solvent credits" in a sense which would subject them to taxation under the foregoing provisions of the constitution and laws of this state, it may be well to take note of the fact that these contracts, while denominated "conditional sales contracts," are not wholly or strictly such; for while as to the seller of the personal properties covered by their terms the title is retained by him and the sale is conditioned upon the fulfillment by the purchaser of the obligations of the contract to be by him performed, the contract is not conditional in so far as the purchaser is concerned, since his agreement to purchase and pay for the property is absolute and may be enforced against him by the seller, regardless of whether the latter may have retaken the property and otherwise disposed of the same on account of some breach in the purchaser's obligation. These contracts, therefore, in the hands of the plaintiff constitute in effect the absolute promise of the respective purchasers of the properties covered by them to pay the sum set forth therein, and they amount, in effect, to the promissory note of the signer thereof to make the required payments at the time and in the manner set forth therein. This unconditional promise on the part of the purchaser of the personal property of which it constitutes the purchase price, to pay the same, has for its security the purchased article of which he has received possession and control, with the indicia and liabilities of ownership and subject only to the reserved right of

the seller to retake the same in the event of the violation of his obligation as the purchaser thereof.

That contracts of this character constitute "solvent credits," whether they relate to real or personal property, has, we think, been established with a fair degree of uniformity. With relation to the sale of land it has been held by practically every state in the Union where constitutional exemptions similar to those existing in California do not prevail, that such contracts are subject to taxation as "solvent credits," or as a taxable species of property separate and distinct from the land affected by their terms. The following are typical cases: *Griffin* v. *People,* 184 Ill. 275 [56 N. E. 397]; *In re Spurgeon,* 72 Ind. App. 580 [126 N. E. 238]; *Gish* v. *Shaver,* 140 Ky. 647 [131 S. W. 515]; *Williams* v. *Board, etc.,* 84 Kan. 508 [34 L. R. A. (N. S.) 1221, 114 Pac. 858]; *In re Assessment, etc.,* 64 Ind. App. 690 [113 N. E. 1012]. By the amendment to the constitution of California, adopted in 1910, it was provided that a mortgage, deed of trust, contract or other obligation by which a debt is secured when land is pledged as security for the payment thereof, together with the money represented by such debt, shall not be considered subject to taxation; but otherwise the provision of said article and section of the constitution providing for the taxation of "all property" expressly including in such designation "credits" and also "all other matters and things, real, personal, and mixed, capable of private ownership," remains unchanged.

Under the foregoing provisions of the constitution and also of the sections of the Political Code above referred to, various forms of solvent credits have been subjected to taxation in this state, and such subjection has heretofore been held legal by this court. In the case of *San Francisco* v. *La Societe, etc.,* 131 Cal. 612 [63 Pac. 1016], suit was brought by the city and county of San Francisco to recover certain taxes levied on solvent credits of the defendant, consisting of loans evidenced by promissory notes held by it and secured by pledges on nontaxable stocks and bonds. This court upheld the assessment of these credits as coming clearly within the constitutional definition of taxable property, and further held that the fact that such loans were secured by the pledge of nontaxable personal property was an immaterial factor in the case. The same ruling was

made in the case of *Savings & Loan Society* v. *San Francisco,* 132 Cal. 599 [64 Pac. 898], in a similar case. [2] We can perceive no real distinction between a credit owned by a creditor, evidenced by a promissory note and having as its security a pledge of personal property and an equally unqualified credit evidenced by an absolute obligation of a would-be purchaser of personal property and having for its security the property purchased, delivered to and held by him, subject only to be repossessed by the seller in the event of the debtor's violation of his said obligation. The fact that the seller holds the naked title to the property with such qualified right of repossession does not, in our opinion, render the transaction other than one whereby an unqualified credit is created and secured by the property of which it constitutes the purchase price. While this court has not heretofore had occasion to pass upon this precise question, the courts of other states have done so and have held that these forms of transactions resulted in the creation of solvent credits which were subject to taxation as such. The most persuasive case upon that subject is that of *Stillman* v. *Lynch,* 56 Utah, 540 [192 Pac. 272], wherein an exactly similar situation was presented to the supreme court of Utah, and wherein that court not only held that the contract in question constituted a solvent credit which was properly subject to taxation under the constitution and laws of that state, but also held that the assessment of the credit to the seller and of the motor vehicle to the purchaser did not constitute double taxation. The constitution and laws of Utah upon the subject of taxation are practically identical with those of California. We discover no essential difference between that case and the case at bar and fully approve the reasoning and conclusions of that court. It is, therefore, our conclusion upon the first phase of the appellant's case upon appeal that the solvent credits held by it in the form of contracts for the conditional sale of motor vehicles were properly assessed as such by the officials charged with that duty, and that the taxes paid by said plaintiff under protest pursuant to such assessment and tax levy are not recoverable.

[3] The second phase of the appellant's case as presented in the trial court and upon this appeal relates to the assessment of certain other of the plaintiff's properties un-

der the following conditions as disclosed by the agreed statement of facts: It appears therefrom that the plaintiff, on February 17, 1923, opened a savings account with the Security Trust and Savings Bank of Los Angeles and deposited therein the sum of one dollar. On March 1, 1923, the plaintiff negotiated a loan of $175,000 from the commercial department of the same bank, and on the same day deposited said sum so borrowed in its said savings account in said bank. On March 7, 1923, the plaintiff withdrew from its said savings account the whole of said sum and repaid its loan thereof to the bank. The board of equalization of the county of Los Angeles, upon an investigation of the foregoing facts, held under the provisions of section 3673 of the Political Code, determined that the foregoing series of transactions on the part of the plaintiff had been undertaken for the purpose of evading taxation and it accordingly acted under the provisions of section 3681 of the Political Code by ordering the plaintiff's assessment raised so as to make it conform to the true value of its assessable property. The trial court determined from the statement of facts showing the foregoing transactions, the testimony taken by the board of equalization with regard thereto, and the conclusions and order of said board, that it had acted within its powers and approved its said action, and, having done so, adjudged that the plaintiff was not entitled to recover the amount of taxes which it had been compelled to pay and had paid under protest as a result of such increase in its assessment. We are of the opinion that the trial court committed no error in its ruling upon this phase of the plaintiff's case. [4] The weight of authority, in our opinion, as well as the dictates of decency, honor and loyalty uphold the right of boards of equalization to fully inquire into transactions of this character with a view to preventing the evasion of taxation by individuals or corporations seeking by these and similar methods so to do. The case of *Holly Springs Savings & Insurance Co.* v. *Supervisors*, 52 Miss. 281 [24 Am. Rep. 668], is quite in point. That case arose out of the act of a banking institution in the investment of its taxable funds in nontaxable securities of the government where it was satisfactorily shown that such investment was not intended to be permanent, but was made for the sole purpose of evading taxation and with the predetermined purpose of

reconverting its said funds as soon as practicable after the date of assessment. In dealing with such a state of facts the supreme court of Mississippi aptly said: ''When the state imposes the burden of taxation upon the property possessed by the citizen it means both that of which he is the open holder and that which he has secreted and concealed. His cunning may in practice defeat the imposition upon the latter, but it is legally no less liable to the burden, and when discovered the duty will be exacted no matter what the shifts and devices which may have been resorted to in order to escape.'' A similar ruling was made in *Poppleton* v. *Yamhill Co.*, 8 Or. 338; *Jones* v. *Seward Co.*, 10 Neb. 154 [4 N. W. 946]; *In re People's Bank, etc.*, 203 Ill. 300 [67 N. E. 777]. In the case of *Columbia Savings Bank* v. *Los Angeles*, 137 Cal. 467 [70 Pac. 308], this court, while upholding the decision of the trial court based upon conflicting evidence that the property in question in that case had not been transferred for the purpose of evading taxation, sustained the principle declared in the Nebraska case. [5] Practically the appellant's contention as to the illegality of the action of the board of equalization consists in the claim that the action of the said board in raising its assessment was taken on a date subsequent to the time within which the board was required to act with regard to such matters under the provisions of section 3672 of the Political Code. The question of the power of boards of equalization to continue in session after the date fixed for the completion of its investigation under the foregoing section of the Political Code has frequently heretofore been before this court for decision and it has been uniformly held that such provisions in the statutes regulating the time within which the acts of administrative officers are to be done are directory, in the absence of a clear intent on the part of the legislature to the contrary. The case of *Buswell* v. *Supervisors*, 116 Cal. 351 [48 Pac. 226], correctly states the rule in that regard and cites the previous cases declaring it. We are satisfied that these cases have application to the facts in the case at bar and that the contention of the appellant to the contrary is without merit.

The judgment is affirmed.

Waste, C. J., Shenk, J., and Seawell, J., concurred. `

CURTIS, J., Concurring.—I dissent from the foregoing opinion in so far as it is held therein that the conditional sales contracts were properly assessed as solvent credits and that the owner thereof is required to pay taxes thereon in addition to the taxes paid on the motor vehicles covered by the contracts. By the contract the title to the motor vehicle remained in the seller and he is by law liable for the taxes assessed against it. To require him also to pay a tax upon the amount remaining due on the agreed purchase price thereof would be to exact of him a double tax which finds no warrant in the law. The fact that in the contracts involved herein between the sellers and purchasers of the motor vehicles the latter have agreed to pay taxes assessed against said motor vehicles can have no bearing upon the legality of the tax involved herein. Presumably, the purchasers have received an adequate consideration for their agreement to pay said taxes, either in the price paid for the property or in the terms of the agreement of purchase. That is purely a personal matter between the parties to the contract and cannot in any way affect the validity of the tax imposed upon the balance due under the contract.

In all other respects I concur in the opinion written by Mr. Justice Richards.