[Civ. No. 7698. First Appellate District, Division One.—August 3, 1931.]

WHITING FINANCE COMPANY (a Corporation), Appellant, v. ED. W. HOPKINS et al., Respondents.

Victor Ford Collins for Appellant.

Everett W. Mattoon, County Counsel, Gordon Boller, Deputy County Counsel, and Erwin P. Werner, City Attorney, for Respondents.

MURPHEY, J., *pro tem·*—This action is predicated upon a stipulated statement of facts, from which the following pertinent to the issues involved in this action are taken:

Plaintiff, an investment company, was assessed in 1924, for city and county taxes in the city of Los Angeles and the county of Los Angeles in the sum of $463,573.91 as solvent credits. Against this amount a deduction in the sum of $142,175.15 on account of debts was allowed. Appellant claimed that it was entitled to a further deduction of $350,000 arising out of the following transactions: On February 25, 1924, the appellant purchased $300,000 worth of Liberty bonds from the Security Trust and Savings Bank, giving in payment therefor its thirty-day promissory note bearing interest at the rate of seven per cent per annum. On the same day the appellant purchased from the American Bank $50,000 in United States treasury certificates

bearing interest at four and one-fourth per cent per annum, giving in payment therefor its thirty-day promissory note bearing interest at the rate of six per cent per annum. These transactions were both subsequently closed on the tenth day of March, 1924, the certificates sold and the indebtedness to the banks liquidated. This transaction, appellant contends, was declared to the assessor, respondent herein. It does not appear from the record or from the stipulation of facts by whom or in what manner such declaration was made. The assessor refused to allow credit for such indebtedness. The court adopted as its findings the stipulation of facts agreed upon by the parties, and in addition thereto found that all of said indebtedness which the assessor refused to allow as offset against plaintiff's solvent credits was incurred solely for the purpose of evading payment of taxes justly due on the property of plaintiff, and for no other purpose. The appellant was obligated in these transactions to pay seven per cent and six per cent interest per annum respectively on these obligations and in return received tax-exempt government securities bearing interest at the rate of four and one-fourth per cent per annum. ▮ It is the contention of appellant that there is no evidence to sustain the additional findings of fact of the trial court hereinbefore set out; that the findings are a mere surmise of the court, and furthermore, that even if it had been proved and found that these indebtednesses were actually created by appellant for the purpose of reducing its taxes, that nevertheless such fact would not be material, relying in support of this statement upon its construction of the conclusions of the New York case of *People* v. *Ryan,* 88 N. Y. 142 [42 Am. Rep. 239], and the assertion that this question has never been passed upon in this state. In the New York case the court said: "We are referred to no statute which prohibits a property owner from choosing between the embarrassment of a debt and submission to a burden, justly indeed imposed on all, and which, if he escapes, must altogether fall upon his neighbors. The assessors therefore exceeded their necessary duty when by inquisition they so pressed the relator as to call from him a disavowal of that purpose and his innocence of intention to circumvent 'the tax laws'. The argument of the appellants is in effect to show that this was an ingenious

falsehood. It touches however not the fact of an indebtedness, but the motive which led to its creation. The statute concerns itself only with the debt. It makes the 'taxable personal property' of an individual, so much only of the species of his estate as remains 'after deducting the just debts owing by him'."

In stating that this question has never been passed upon by the courts of this state, counsel for appellant entirely overlooked the case of *Whiting Finance Co.* v. *Hopkins,* 199 Cal. 429 [249 Pac. 853], wherein the activities of this same corporation as appellant were concerned, and wherein the facts in substance and effect were identical with the situation involved in this litigation. In that case the Supreme Court said: "It appears therefrom that the plaintiff, on February 17, 1923, opened a savings account with the Security Trust and Savings Bank of Los Angeles and deposited therein the sum of one dollar. On March 1, 1923, the plaintiff negotiated a loan of $175,000 from the commercial department of the same bank, and on the same day deposited said sum so borrowed in its said savings account in said bank. On March 7, 1923, the plaintiff withdrew from its said savings account the whole of said sum and repaid its loan thereof to the bank. The board of equalization of the county of Los Angeles, upon an investigation of the foregoing facts, held under the provisions of section 3673 of the Political Code, determined that the foregoing series of transactions on the part of plaintiff had been undertaken for the purpose of evading taxation, and it accordingly acted . . . by ordering the plaintiff's assessment raised so as to make it conform to the true value of its assessable property. . . . We are of the opinion that the trial court committed no error in its ruling upon this phase of the plaintiff's case. The weight of authority, in our opinion, as well as the dictates of decency, honor and loyalty uphold the right of boards of equalization to fully inquire into transactions of this character with a view to preventing the evasion of taxation by individuals or corporations seeking by these and similar methods so to do."

The facts of this case tend more strongly to support the position taken by respondents than do the facts in the case just quoted between the same parties. The record shows that appellant is a finance company dealing in automobile

conditional sales contracts. Practically its entire assets consist of solvent credits. Just before the tax date, under the procedure already detailed, appellant incurred debts in an amount sufficient, if effective for the purpose, to wipe out entirely the tax upon such credits. It was no part of appellant's business to deal in stocks and bonds. Its sole business was automobile sales contracts. Nevertheless it incurred debts in the sum of $350,000 in order to purchase government securities. On February 25, 1924, just a week prior to 12 o'clock A. M. of March 3, 1924, appellant by two transactions incurred debts in order to purchase $300,000 of tax-exempt bonds and $50,000 of tax-exempt United States certificates. The notes were given to run only thirty days. They paid respectively seven per cent and six per cent interest on these obligations. In adjusting the matter the period of interest payment and the consequent loss sustained thereby was cut to the lowest possible minimum, to wit, fifteen days. The purchased certificates were sold and the notes paid off within fifteen days when but half their time had run. In other words the securities were bought a week before tax day, and sold the Monday following. The transaction involved an immediate financial loss and net cost to appellant of two and three-fourths per cent on $300,000 and one and three-fourths per cent on $50,000. It is perfectly apparent from this recitation of the facts, as they appeared not only to the city and county assessor and the board of equalization of Los Angeles County, but also to the judge of the superior court who tried the case, that the purpose of this transaction was not a business transaction with a view to financial profits, such as usually actuate business men in such transactions, nor was the purpose a patriotic one such as was evidenced by loyal citizens during war time, nor was the purpose to bear its proportion of the burden of taxation in support of municipal and county government. We do not see any escape from the conclusion reached by these officers that this transaction was intended to be merely a temporary deal conceived and executed with the purpose and intent of evading its just tax responsibility. Appellant concedes that the assessor, board of equalization and the trial court believed that this indebtedness was created with the motive of evading taxation. We are of the opinion that their belief is predicated upon

and amply supported by a recital of the facts hereinabove set out.

While in the New York case, *supra*, the view seems to be that neither the assessor, the board of equalization, nor the court can investigate an attempted patent fraud of this character, it nevertheless is not the rule in this state, nor have the courts in this or other jurisdictions felt that their eyes must remain closed and their powers to function stand helpless and paralyzed to render nugatory and ineffectual such fraudulent purposes as are evidenced by the manipulations in the instant case. In *Holly Springs Sav. & Ins. Co.* v. *Supervisors,* 52 Miss. 281 [24 Am. Rep. 668], the court said: "The question presented is, therefore, whether a banking institution can avoid taxation by an investment of its means in the nontaxable securities of the government, where it is admitted and satisfactorily established that such investment was neither intended to be permanent nor to continue until the interest or the will of its managers should dictate a change, but with the sole intention of escaping taxation, and with the predetermined purpose of reconverting its means as soon as practicable after the day of assessment. . . . The court below did not err in holding the capital stock of plaintiff in error to be taxable under the state of facts disclosed by the record. . . . It is argued that the savings institution was only bound by law to make out and deliver a list 'of all taxable property of which it was possessed on the 1st day of January preceding', and that if on said day it was possessed of no property taxable by law, it cannot be made to pay taxes, and that the state cannot inquire by what means it dispossessed itself of the property, or what are its intentions with regard to repossessing itself of it. There are, we think, two satisfactory answers to this reasoning. In the first place, it proceeds upon a too literal interpretation of the statute; and, in the second place, it overlooks the principle that fraud vitiates everything into which it enters, and nullifies the advantages which fair dealing would have conferred. When the state imposes the burden of taxation upon the property possessed by the citizen, it means both that of which he is the open holder and that which he has secreted and concealed. His cunning may in practice defeat the imposition upon the latter, but it is legally

no less liable to the burden, and, when discovered, the duty will be exacted, no matter what the shifts and devices which may have been resorted to in order to escape."

In the case of *Jones* v. *Seward County*, 10 Neb. 154 [4 N. W. 946], the court says: "The court below found that the plaintiff did not purchase the bonds in question in good faith. Is this finding sustained by the evidence? We think it is. The plaintiff does not claim that the money was intended by him to remain invested in bonds. On the contrary, it appears from his own testimony that the investment was merely temporary. It is evident that the investment, if such it can be called, was not made for profit, although there was a small profit. . . . But it is said fraud is never presumed, but must be proved. This is true. But in what manner is it to be proved? Judge Story says: 'Fraud, indeed, in the sense of a court of equity, properly includes all acts, omissions, and concealments which involve a breach of legal or equitable duty, trust, or confidence, justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another.' (Story's Eq. Juris., sec. 187.) And in speaking of the proof, it is said: 'On the other hand, neither of these courts insists upon positive and express proofs of fraud; but each deduces them from circumstances affording strong presumptions.' (Id., sec. 190.) In but few instances, comparatively, can fraudulent intent be shown by direct testimony, and therefore, it is generally established by circumstantial evidence. In our opinion the testimony establishes the fact that the bonds in question were purchased by the plaintiff, not with the design of making a permanent investment, but for the sole purpose of evading taxation. . . . Where a charge is thus made for the sole purpose of defrauding the government of its just dues, and to enable a party to escape the payment of his just proportion of the taxes imposed by law, he cannot shelter himself behind such temporary change in the character of his funds to escape taxation."

To the same effect are the cases of *In re People's Bank of Vermont*, 203 Ill. 300 [67 N. E. 777]; *Poppleton* v. *Yamhill County*, 8 Or. 337; *Mitchell* v. *Commissioners, etc.*, 91 U. S. 206 [23 L. Ed. 302], in which case the Supreme Court of Kansas dismissed the appeal (9 Kan. 344) saying that "a court of justice, sitting as a court of equity, will

not lend its aid for the accomplishment of any such purpose.'' Mitchell appealed to the United States Supreme Court, which said: ''We think the decision in this case was correct. United States notes are exempt from taxation by or under state or municipal authority; but a court of equity will not knowingly use its extraordinary powers to promote any such scheme as this plaintiff devised to escape his proportionate share of the burdens of taxation.'' (See, also, *Dixon County* v. *Halstead,* 23 Neb. 697 [37 N'. W. 621]; *Senour* v. *Matchett,* 140 Ind. 636 [40 N. E. 122].)

The trial court, so far as disclosed by the record, based its decision solely, and this is evidenced by the foregoing discussion and we believe correctly, upon the ground of fraudulent evasion of tax obligation to the municipality and county government in the city of Los Angeles and in the county of Los Angeles. ■ Respondent discusses several other points in support of the conclusions reached by the trial court, all of which appellant contends were not presented to that tribunal. It is not clear from the record just what matters were called to the attention of the trial court. These points, briefly stated, are, first, that appellant did not entitle itself to the deductions which it herein claims by declaring in its property statements to the assessor its alleged deductible debts. Such a declaration by the property owner under oath in its property statement is a condition precedent to any right to a deduction of debts in the assessment of taxable credits. (Pol. Code, sec. 3629, subd. 7; 3 Cooley on Taxation, 4th ed., sec. 1159.)

■ · Second, it does not appear that appellant's notes to the two banks were issued to residents of the state, such that if still held by the banks on the tax date, they would be legally deductible from appellant's taxable credits. ■ Third, appellant did own taxable credits. The valuation of such credits, whether by the process originally fixing that value, or of fixing it after first crediting against the same the amount of deductible debts, was a question of valuation purely, and as such, was for the assessor and the board of equalization. It was not a question open to judicial review. (*Los Angeles Gas & Elec. Co.* v. *County of Los Angeles,* 162 Cal. 164 [9 A. L. R. 1277, 121 Pac. 384]; *Southern California Hardwood etc. Co.* v. *County of Los Angeles,* 49 Cal. App. 712 [194 Pac. 62]; *Globe Grain &*

*Milling Co.* v. *County of Los Angeles,* 62 Cal. App. 297 [216 Pac. 631].) These are all cases in which the point involving this subdivision was practically passed upon adversely to the contentions of appellant by the appellate court of this state.

We do not deem it necessary to discuss extensively the questions raised in points 1, 2 and 3, just outlined, as we deem the conclusion of the trial court on the sole point mentioned in its findings and judgment to be so manifestly a correct legal solution of the problems involved in this litigation, that any further discussion would be superfluous.

The judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.