[Civ. No. 8237. First Appellate District, Division Two.—February 23, 1932.]

AUTOMOBILE ACCEPTANCE CORPORATION (a Corporation), Appellant, v. ED. W. HOPKINS et al., Respondents.

Paul Lowenthal and William Berger for Appellant.

Everett W. Mattoon, County Counsel, Gordon Boller, Deputy County Counsel, and Erwin P. Werner, City Attorney, for Respondents.

JAMISON, J., *pro tem.*—Appellant seeks to recover from respondents, by this action, the amount of certain taxes assessed against its property for the year 1924, and which it paid under protest. Appellant claims that it should have been credited against the assessed valuation of said property with $383,300, unsecured promissory notes owing to residents of this state and $300,000 owing by it to certain banks upon unsecured promissory notes executed by it to them. At the trial the case was submitted to the court upon a stipulation of facts and these stipulations were adopted as a part of the findings. The said stipulated facts are brought up on this appeal by a bill of exceptions.

It appears from the stipulated facts that on the first Monday in March, 1924, at the request of respondent, Ed. W. Hopkins, who was the assessor for the county and city of Los Angeles, appellant made a statement of its taxable property, real and personal, owned by it at that date.

The said assessor refused to accept the statement of the appellant and thereupon made an independent investigation of appellant's business and property. The result of that investigation was that he refused to allow appellant a deduc-

tion from the valuation of its property the sum of $383,300, which appellant claims was the aggregate sum of unsecured promissory notes which it claimed it owed to residents of this state.

The court found that appellant issued $400,000 of unsecured promissory notes in denominations of $5,000 or less, they were payable to bearer and were outstanding on the first Monday in March, 1924, and none of them was paid prior to October, 1924. Appellant was unable to furnish the said assessor with the names and addresses, of a large majority of the holders of said notes, being able to furnish the names and addresses only of the holders of $16,700 thereof, and credit was given by the assessor for this last-named sum, but no credit was allowed for the remaining sum of $383,300.

Appellant also claimed that it was entitled to a further reduction of $330,000 by reason of the following transactions: On January 24, 1924, appellant purchased from the Security Trust and Savings Bank ten $10,000 par value four and one-fourth per cent United States of America certificates and in payment thereof appellant executed to said Savings Bank its promissory note payable February 23, 1924, in the sum of $90,000 with interest at the rate of six per cent per annum, said note being secured by a pledge of the said certificates, and as part of said purchase price executed an unsecured promissory note for $12,000, with interest at the rate of six per cent per annum. Said last-named note was dated January 24, 1924, and due sixty days after date. Thereafter on February 24, 1924, being the due date of the $90,000 promissory note, appellant paid said last-named note by the execution to said Savings Bank of a new unsecured $90,000 note with interest at the rate of six per cent per annum, and thereupon said certificates were delivered to appellant. The said two notes were paid on March 15, 1924, by the proceeds of said certificates, which matured on that date. On February 25, 1924, appellant purchased from the California Securities Company $100,000 par value United States certificates of indebtedness, four and one-half per cent interest, due March 15, 1924, which were purchased at 100 1/16 and which had accrued interest of $1903.16, making a total purchase price of $101,965.66. Appellant paid for these securities by check for $1965.66,

and by its unsecured promissory note for $100,000 due thirty days after date with interest at six per cent per annum. That said certificates were thereupon delivered to appellant. That upon March 14, 1924, they were delivered back to said bank and the same maturing March 15, 1924, collection of them was made by said bank and the proceeds applied to the payment of said $100,000 note.

On January 29, 1924, appellant purchased from the Citizens Trust and Savings Bank $125,000 par value four and one-half per cent interest United States treasury certificates due March 15, 1924, plus $2,101.25 accrued interest and $75,000 par value due June 15, 1924, purchased for 100 3/32 accrued interest $375.

The said Trust and Savings Bank gave a check to appellant making a total of $202,785.30, which was paid for by a promissory note for $23,000 due March 15, 1924, and a promissory note for $180,000, said note being dated January 29, 1924, and due February 28, 1924. Said $180,000 note was secured by all of said United States treasury certificates purchased from the said Trust and Savings Bank. The $23,000 note was unsecured and was paid March 15, 1924. On February 28, 1924, the said $180,000 note was paid by the execution of four promissory notes to said Trust and Savings Bank, one being for $30,000 and three being for the sum of $50,000 each, all of them being unsecured and all of them being dated February 29, 1924, and due March 29, 1924, and all bearing interest at six per cent per annum. That upon the execution of the said four notes all of said certificates were delivered to appellant and were held by it until they became due, to wit: $125,000 on March 15, 1924, and $75,000 on June 15, 1924.

That on March 15, 1924, the said $125,000 certificate was delivered to said Trust and Savings Bank for collection and the same was collected and $100,000 of the proceeds applied to the payment of two of the $50,000 notes. The other two notes, one for $50,000 and the other for $30,000 were paid some time later in March, 1924.

The court further found that appellant filed with the board of supervisors of said county of Los Angeles its petition for a refund in accordance with section 3804 of the Political Code and demanded a refund, and that thereafter the matter came on regularly for hearing before said

board and the said matter was presented and thereupon said board made an order denying said petition.

It was also found that all of said banks were California banks whose principal places of business were located in Los Angeles.

The court found that the indebtedness of appellant to said banks which the assessor refused to set off against its taxable solvent credits was incurred solely by it for the purpose of evading the just payment of taxes on its property and for no other reason.

Appellant is a finance company dealing in automobile conditional sales contracts, and practically its entire assets consist of solvent credits. No part of its business was dealing in government bonds or securities. Yet we find that on January 24, January 29 and February 25, 1924, it purchased tax-exempt United States certificates to the amount of $400,000, all of these certificates, except one for $75,000, maturing on March 15, 1924. It does not appear that appellant had a surplus on hand that it desired to invest in bonds, for it purchased each of the said certificates by giving its notes for the purchase price and the said notes were satisfied and paid from the collections of the certificates at their maturity, except the two notes of $30,000 and $50,000, paid the last of March, 1924.

The purchase of these certificates entailed a loss to appellant of not less than one and one-half per cent per annum on this purchase of $400,000 of tax-exempt certificates, for the notes given for their purchase called for six per cent per annum, while the certificates only called for four and one-fourth and four and one-half per cent per annum. It is apparent that the purpose appellant had in view in purchasing these tax-exempt certificates, and the only purpose as found by the court, was to evade the just payment of its taxes.

It is a significant fact that while appellant had pledged the certificates for $100,000 and also the $200,000 sold him by the Security Trust and Savings Bank, to secure the payments of the promissory notes given for their purchase, yet the said bank released all of said certificates from pledge and on February 25 and 28, 1924, took unsecured notes for the said purchase price.

It is evident that this was done to meet the requirements of subdivision 6 of section 3629 of the Political Code, which provides that in making the statement to the assessor, the person making same shall therein deduct from the solvent credits such debts only, unsecured by trust deed, mortgage or other lien on real or personal property, as may be owing by such person, firm or corporation to *bona fide* residents of this state.

 It appears to be well settled that if the transaction is merely a temporary change of property from nonexempt to exempt property, made shortly before the assessment, with the intent of restoring the property to its original form after the assessment, there is such a fraud as warrants the taxation of the property. This rule as to the power to tax has been applied to a merely temporary conversion into United States bonds or other exempt securities. (See Cooley on Taxation, 1028, 1029; 37 Cyc. 770; *Holly Springs S. & I. Co.* v. *Supervisors of Marshall County*, 52 Miss. 281 [24 Am. Rep. 668]; *Jones* v. *Seward County*, 10 Neb. 154 [4 N. W. 946]; *In re People's Bank of Vermont*, 203 Ill. 300 [67 N. E. 777].)

In the recent case of *Whiting Finance Co.* v. *Hopkins et al.*, 115 Cal. App. 756 [2 Pac. (2d) 461], in which the facts are almost identical with those of the case at bar, the court held that, where a few days before the date for which the taxes would attach for that year, plaintiff borrowed money and used the money to purchase tax-exempt United States securities and shortly after such tax date sold the said securities and paid off the indebtedness, and plaintiff's business was to deal in automobile sales contracts and not in stocks and bonds the trial court was warranted in finding that the purchase of the tax-exempt securities was but an attempt by plaintiff to evade payment of taxes upon its personal property, and in holding that plaintiff was not entitled to a deduction for its indebtedness to the banks from which it borrowed the money to pay for such tax-exempt securities. To the same effect is the case of *Whiting Finance Co.* v. *Hopkins et al.*, 199 Cal. 428 [249 Pac. 853].

The next question for consideration is whether or not appellant is entitled to a reduction of the $383,300 for debts owing by it to the holders of its notes payable to bearer.

Appellant alleges in its amended complaint that on the first Monday in March, 1924, it was indebted to *bona fide* residents of this state in the sum of $383,300, evidenced by promissory notes payable to bearer for money borrowed by it, and used in the ordinary conduct of its business. That all of said notes were issued and paid in the county of Los Angeles; that by reason of the fact that said notes were payable to bearer appellant did not know who were the holders thereof on the first Monday in March, 1924, but alleges that said notes were held by *bona fide* residents of California. The answer of respondents specifically denied that the holders of said notes were *bona fide* residents of this state. Therefore, the burden rested upon appellant to produce proof to the effect that on said first Monday in March, 1924, the holders of said notes were *bona fide* residents of this state. This it wholly failed to do. Appellant contends that the court failed to find that the holders of these notes payable to bearer were not residents of this state. Such finding was unnecessary. The stipulated facts would not have supported such a finding.

The court did find that the appellant did not know the names or addresses of the owners of said notes payable to bearer and that an independent investigation by the assessor failed to reveal their residences, except as to the owners of $16,700 of said notes. At the trial appellant produced no evidence or stipulation that such owners were *bona fide* residents of this state.

Perhaps the court should have more explicitly found that appellant had failed to produce any evidence that the owners of the notes payable to bearers were residents of this state, but as was said in *Hulen v. Stuart,* 191 Cal. 562 [217 Pac. 750, 754]: "From the facts found, and from the judgment ordered, it is evident, in the light of the entire record, that if more complete findings had been made they would have been adverse to the contention of appellant. If that be so, the failure to find further is not a ground for reversal." (24 Cal. Jur. 944.)

Respondents rely upon some other propositions to support the judgment, but in view of the foregoing conclusions we do not consider it necessary to pass upon them.

The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.