Rehearing refused.

No. 14,288.

GRIGGSBY CONSTRUCTION COMPANY vs. J. W. FREEMAN, TAX COLLECTOR, ET ALS.

| | |
|---|---|
| 108 | 435 |
| e121 | 1002 |
| 108 | 435 |
| 122 | 135 |
| 108 | 435 |
| f124 | 640 |

SYLLABUS.

1. A taxpayer who has been twice requested by the assessor to furnish a list of his property for assessment, is, by express provision of the revenue law estopped from thereafter contesting the correctness of the list of property made by the assessor as best he could.

2. Blacksmith's tools and commissary store goods kept by a corporation as part of, or in connection with, an outfit for doing construction work, are liable to taxation.

3. A bridge tax levied under authority of the Constitution on all the property generally in a ward, is not a local assessment, even though for the imposition of it a vote of the taxpayers of the ward is required.

4. It is not double taxation, within the constitutional prohibition, to tax the same thing in two jurisdictions where each has a right to tax it.

5. The prohibition of our revenue law against taxing property twice in the same year, does not apply to taxation in another State.

6. What degree of permanency the presence of property within the taxing jurisdiction must have before the property can be said to be no longer *in transitu,* and therefore to be liable to taxation, is more a question of fact than of law. In this case a contractor's outfit consisting of mules, scrapers, etc., brought here from another State to be used in the construction of a

railroad bed, on which work it was likely to be occupied for several months at least, is held to be taxable.

APPEAL from the Eleventh Judicial District, Parish of Natchitoches—*Porter*, J.

*Jack & Fleming*, for Plaintiff, Appellant.

*Walter Guion*, Attorney General, and *W. A. Wilkinson*, District Attorney (*Lewis Guion* and *Chaplin, Breazeale & Chaplin*, of Counsel), for State of Louisiana, Defendant, Appellee.

The opinion of the court was delivered by

PROVOSTY, J.   By section 1 of act 170 of 1898, the revenue law of the State, it is provided that taxes are levied "on all property situated within the State of Louisiana except such as is expressly exempted from taxation by law"; and that "the term property, as herein used, means and includes   *   *   *   all movable and immovable, corporeal and incorporeal articles or things of value owned and held and controlled within the State of Louisiana by any person whatsoever."

By section 7 of the same act, it is made the duty of the assessors "to put upon the assessment list all property subject to taxation within their respective districts or parishes."

By section 12 of the same act, property omitted from the assessment roll must be assessed on a separate roll.

By section 14, it is made the duty of every taxpayer to fill out a list of a prescribed form, and to make oath to same and to return same to the Assessor before the first day of May of each year; and it is provided that "any refusal, neglect or failure from any cause whatsoever to comply with this provision of this act; shall act as estopping the taxpayer from contesting the correctness of the assessment list filed by the Assessor."

By section 19, it is provided that in case the taxpayer fails or refuses to furnish said list of his property within the time prescribed, the Assessor "shall himself fill out said list from the best information he can obtain."

In making his assessment for the year 1901 the Assessor of the parish of Natchitoches called upon the plaintiff's agent to furnish, as required by law, a list of its property situated in the parish and subject

to taxation. The plaintiff is a Texas corporation, having its domicile at Dallas, Texas. It operates in that State and in adjoining States in the construction of dams, dykes, levees, railroad beds, and other earth-work, and for that purpose has outfits consisting of mules, scrapers, wagons, commissary store goods, tents, etc., etc., which it sends to the places where work is to be done. At the time when its agent was thus called upon by the Assessor, plaintiff was doing grading work for the Texas and Pacific railroad in the parish of Natchitoches, and the property sought to be assessed was a construction outfit and other movables necessary or convenient in the doing of that work. The agent questioned whether said property was liable to taxation in Louisiana, and asked for time to consult counsel. A second attempt was made to get from the agent a list of the property of plaintiff, and this second attempt proving equally fruitless, the Assessor, as required by law, made out a list of the property as best he could, and put same on his roll. Plaintiff failing to pay the tax thus assessed, the Tax Collector proceeded to enforce payment by seizure of some of the mules assessed, and plaintiff brought this suit enjoining the seizure.

We shall consider only the grounds insisted on in the brief, and shall take them up in the order in which they are presented in the brief.

First. That the assessment includes property not belonging to plaintiff, and for the taxes on which plaintiff is not responsible.

Suffice to say that plaintiff having been called upon by the Assessor to furnish a list of its property, and having failed to do so, is, by the express terms of the Revenue Act, section 14, "estopped from contesting the correctness of the assessment list filed by the Assessor."

Second. That the blacksmith tools, etc., and the merchandise were exempt from taxation.

The goods in a commissary store are property, and as such are liable to taxation; and so are tools, etc., of a blacksmith, unless they are the tools by which the taxpayer earns his living, which these are not.

Third. That a part of the taxes demanded, namely: the bridge ward tax, is not a tax properly speaking, but a local assessment, and that plaintiff's property not sharing in the benefits of this assessment cannot be made to pay same.

The essentially characteristic feature of a local assessment is that it is levied on *particularized* property, and not on property generally. Charnock vs. Levee Co., 38 Ann. 327. This feature is the corollary of

what in theory, if not in actual practice, is the fundamental principle of the law of local assessment, that the tax should be levied on each particular piece of property in proportion to the benefit it is to derive (not supposedly only, but actually), from the expenditure of the avails of the tax. Village of Norwood vs. Baker.

The mere localness of the tax is not necessarily a distinguishing feature. Nor is the fact that the tax was imposed only after consultation of the taxpayers. Consultation of the taxpayers might have been dispensed with by the framers of the constitution in authorizing the imposition of the tax; and, on the other hand, local assessments may be, and every day are, levied without consultation of the contributors. As this tax though local is levied on property generally and irrespective of special benefit we conclude that it is not a local assessment.

Fourth. We find it difficult to reduce this ground to any single proposition; or, in fact, to be positive exactly what the contention is: so that we prefer to transcribe here the statement of it as found in the brief. This statement is as follows:—

"We now contend that the exaction of these taxes, under the peculiar facts and circumstances of this case, would be in violation of the spirit of the law in that it would operate a double taxation upon the plaintiff's property.

"It is disclosed by the record that this identical property, then situated in Gregg county, Texas, was duly assessed to this company in January, 1901, and that it was not removed from that place to this parish until the latter part of April of that year, and then only for the purpose of doing certain temporary work in the parish of Natchitoches, and was not assessed until the 24th of June of that year. 49th Ann. 401.

"It is further shown with reasonable certainty that this tax so assessed in Texas has been subsequently paid and discharged.

"Now, whilst it is a general rule, both here and elsewhere, that personal property is liable to be taxed wherever it may be situated (by which is meant that the situs rather than the domicile controls in such cases), yet the question in this case is whether this property under the circumstances of the case had any such situs, and if so whether it is to be freed from taxation there by reason of its prior assessment in the State of Texas.

"We know of no adjudicated case in this State in which this ques-

tion has been presented, and it occurs to us, that under the *spirit* of the law, at least, this property should not be held liable.

"Section 7 of Act 170 of the Acts of 1898 places the non-resident, in such matters, precisely on the same footing with that of the residents of the State.

"His burden is not made heavier than that of the citizen, and, inasmuch as no citizen could be held liable for double taxation in this State, there is no reason why the non-resident should be made to pay a double tax, one in his own State and the other here.

"The words of the section, in ths regard, are, *"No property shall be taxed twice in the same year,"* and it is clear, therefore, that double taxes could not be collected in this State from either a resident or a non-resident in the same year.

"What difference, therefore, does it make in the intendment of the law, whether this double taxation should be brought about by an assessment in Texas and also by an assessment here?

"To say the least, it would operate a hardship on the non-resident which the resident could never be required to undergo.

"Besides this, it is sought to tax the non-resident for the whole year. when, in point of fact, his property had only been within the jurisdiction of the State and parish about two months when the assessment was made on the 24th of June, 1901, and about six months when it was seized by the sheriff.

"The Supreme Court, in State *ex rel.* Insurance Co. vs. Board of Assessors *et al.,* 47 Ann. 1544, whilst endorsing the doctrine that the actual situs of personal property determines the State in which same is taxable, further says, ' But it has never been decided that tangible personal property could not be assessed at the owner's domicile, notwithstanding its actual situs was abroad in some other state or country.' It would seem from this, that according to the opinion of the court, that if the property had been assessed at the place of the owner's domicile (where its situs then was) that this assessment would govern and bar another assessment in another State."

If by this is meant that a State cannot tax property that has been taxed once already in the same year in another State, the contention is not sustainable. In the case of Coe vs. Errol, 116 U. S. 524, the Supreme Court of the United States said:—

"If the owner of personal property within a State resides in another

State which taxes him for that property as part of his general estate attached to his person, this action of the latter State does not in the least affect the right of the State in which the property is situated to tax it also."

"It is not double taxation within the constitutional prohibition to tax the same thing in two jurisdictions where each has a rght to tax it." Am. & Eng. Ency. (1st Ed.), Vol. 25, p. 68.

If it is contended that this right which the State had to tax this property, the State has consented to forego, and that this is the meaning of the provision of the revenue law against taxing property twice in the same year, we have no hesitation whatever in saying that again the contention is not well founded. To abstain from taxing property because it has paid taxes to another sovereign, might be well enough in altruistic philosophy, but has no place in any revenue system based on sound principles. Taxation and legal protection must go together. If this property enjoys the benefit of the protection of the laws of this State it must, under sound principles of taxation, pay its just quota towards defraying the expense of the administration of those laws; and to let it off from the payment would be an individous discrimination against the other property of the State which would then have to bear that much more than its just and equal share of the expense of the administration of the laws. By this prohibition our law-makers have not intended to make an excursion into the domain of sentiment, but have intended that property taxed in a parish should not be taxed again in the same or in another parish for the same year; or, in other words, have intended to give statutory expression to the principle of equality and uniformity in taxation, a principle not abraded by taxing a second time property already taxed by another sovereign.

If the contention is that this property having been brought here but recently, and being here but temporarily, has not such a *situs* here as will justify its taxation,—and we assume that this is the main reliance of the learned counsel for plaintiff,—a question is raised on which we find the law to be in a condition of considerable uncertainty. Property *intransitu* may not be taxed, and property having a *situs* may; but at what point does property pass from a stage of transit to that of such permanency as will justify taxation? By what characteristics is a state of transit to be distinguished from a state of permanency? For the solution of this question no rule has as yet been formulated, and per-

haps in the nature of things none can be, the question being one more of fact than of law; and the adjudications do not furnish much assistance.

If property is to remain in the State for a short time only, it would seem harsh and unjust to make it pay as much as if it was to receive or had received an entire year of protection; on the other hand, as was observed by the Supreme Court of the United States in the case of Brown vs. Houston, 114 U. S. 63, "when the assessor of taxes goes his round how is he to distinguish between those goods which are taxable and those which are not?"

In the case of Charleston vs. State, Speers, Vol. 2, p. 719 (S. Car.), the complainant lived outside of the City of Charleston, but had his place of business in the city, and to attend to his business went daily into the city with his carriage and coachman; also he had a slave whom he sent every day into the city to do jobs wherever employment could be found for him. Under the city regulations the slave had to wear a badge, and this badge had to be furnished by the city. The slave coachman and the carriage and horses were held not to be taxable, but the other slave was held to be taxable.

In the case of Kelley vs. Rhodes, 39 L. R. A. 594 (Wyoming), a herd of sheep was held to be taxable which was being driven in the direction of market across the State, but slowly, so as to permit the sheep to graze as they went, the main purpose being to graze the animals and put them in condition for market, the moving towards market being merely incidental. The court distinguished the case from one where the moving towkards market would have been the main purpose and the grazing a mere incident.

In the case of Robinson vs. Longley, 18 Nev. 71, a circus was held not to be taxable.

In People vs. Niles, 35 Cal. 282, the court said *arguendo*: "It must appear that the property is being to some extent kept or maintained in said county and not there casually, or *in transitu*, or temporarily in the ordinary course of business or commerce."

On the other hand, the Supreme Court of the United States in the case of Brown vs. Houston, *supra cit,* and this court, in the same case, 33 Ann. 843, seem to have regarded the fact that the property had been brought to the State for "use," as being a determinative circumstance.

In the instant case the property was not in course of transportation,

442 SUPREME COURT OF LOUISIANA,

Railway Company et al. vs. Tax Collector et als.

but was here for use, and for a use likely to be of some duration, possibly a full year; and for the time being was incorporated in the bulk of the property of the State. It was dintinguishable from the rest of the property of the taxing district in no respect except in the intention of the owner to remove it at some future time more or less distant. Under these circumstances its *situs* approached nearer to permanency than did that of the sheep in the Wyoming case, or that of the coal in the Brown vs. Houston case.

The judgment appealed from is affirmed with costs.

Rehearing refused.