[L. A. No. 15996.   In Bank.—February 15, 1937.]

BROCK & COMPANY (a Corporation), Appellant, v. BOARD OF SUPERVISORS, etc., et al., Respondents.

Holbrook, Taylor, Tarr & Reed and W. Sumner Holbrook, Jr., for Appellant.

McFarlane, Schaeffer, Haun & Mulford and Earl C. Redwine, District Attorney (Riverside County), as *Amici Curiae* on Behalf of Appellant.

Everett W. Mattoon, County Counsel, and Gordon Boller, Deputy County Counsel, for Respondents.

SHENK, J.—The plaintiff is engaged in the business of selling jewels and jewelry in the county of Los Angeles. As of March 4, 1935, its jewelry stock was assessed pursuant to section 3628 of the Political Code at a value of $390,745. It objected to the assessment to the extent of $143,465, which was the value of a portion of its stock located on the tax day in Honolulu, territory of Hawaii. For the purpose of testing the question whether that portion of its jewelry was assessable in Los Angeles County, the assessment was split and a separate personal property tax was levied against the $143,465 item. The plaintiff brought this action to cancel the assessment on that part of the merchandise on the ground that said merchandise was without the jurisdiction of the state on the tax day and that the assessment was in violation of the due process clause of the federal Constitution. The trial court concluded that the taxable situs of the merchandise was in Los Angeles County and that the plaintiff was not entitled to the cancellation. The plaintiff has appealed from the judgment which followed.

There is no dispute as to the essential facts. On February 22, 1935, the plaintiff shipped to Hawaii about half of the stock of its more valuable jewelry and precious gems. George C. Brock, its vice-president, and Orville Joy, a salesman, embarked on the same boat which transported the gems and jewelry. On arrival in Honolulu the merchandise was deposited in a vault of the Hawaiian Trust Company. From March 4th to 14th, both dates inclusive, the jewelry was on display at the vault of the trust company to certain wealthy residents of the territory to whom its presence was made known by telephone message. None of the jewelry was sold there. All of it was returned to the plaintiff's stock in Los Angeles on March 22d following, with the exception of one ruby bracelet valued at $5,000, which was left in Honolulu with a local concern for purposes of sale but which at the time of the trial herein had not been sold. The intention in taking the stock to Honolulu was twofold: One purpose was the exhibit of the stock and the possible sale of any portion thereof to wealthy residents of Honolulu, for the duration

of the stay of Messrs. Brock and Joy, and the return of all unsold to the company's general stock in Los Angeles. The other was frankly conceded to be to reduce the plaintiff's personal property taxes in Los Angeles County. Personal property was not subject to tax in Hawaii except by way of a sales transfer tax, and this fact was known to the plaintiff prior to the departure from California. The question presented in this case is whether the foregoing facts establish such an interruption of the permanent situs of the stock at the owner's domicile in Los Angeles County as would withdraw it from the jurisdiction of this state on March 4, 1935.

The plaintiff invokes the language of section 3628 of the Political Code providing that " . . . all taxable property shall be assessed in the county, city . . . or district *in which it is situated*". It places its main reliance on *Brown* v. *Houston,* 114 U. S. 622 [5 Sup. Ct. 1091, 29 L. Ed. 257], *Pittsburg etc. Coal Co.* v. *Bates,* 156 U. S. 577 [15 Sup. Ct. 415, 39 L. Ed. 538], and *Frick* v. *Pennsylvania,* 268 U. S. 473 [45 Sup. Ct. 603, 69 L. Ed. 1058, 42 A. L. R. 316], in support of its interpretation of the language quoted to the effect that property is taxable in the city or county if it is present there on the tax date, that is, that the property involved here was not taxable in Los Angeles County because it had been taken from that county and from the state to the territory of Hawaii, where on the tax date it was present for the purpose of exhibit and sale.

■ The doctrine *mobilia sequuntur personam* is no longer a conclusive guide as to the situs for tax purposes of tangible personalty, and such property now, by statute or otherwise, is taxable in the locality where it has an established permanent situs, irrespective of the owner's domicile. (*Buck* v. *Beach,* 206 U. S. 392, 400, 401 [27 Sup. Ct. 712, 51 L. Ed. 1106, 11 Ann. Cas. 732] ; *Wheeler* v. *Sohmer,* 233 U. S. 434 [34 Sup. Ct. 607, 58 L. Ed. 1030] ; *Frick* v. *Pennsylvania,* 268 U. S. 473, 490–493 [45 Sup. Ct. 603, 69 L. Ed. 1058, 42 A. L. R. 316] ; *Safe Deposit & T. Co.* v. *Virginia,* 280 U. S. 83, 93 [50 Sup. Ct. 59, 74 L. Ed. 180, 67 A. L. R. 386] ; *City Bank Farmers' Trust Co.* v. *Schnader,* 293 U. S. 112 [55 Sup. Ct. 29, 79 L. Ed. 228].)

■ By the above-cited section of the Political Code property in this state is taxable where it is "situated". But in its

application to personal property that term has a broader concept than that urged by the plaintiff. It connotes a more or less permanent location or situs, and the requirement of permanency must attach before tangible property which has been removed from the domicile of the owner will attain a situs elsewhere. (*People* v. *Commissioners of Taxes,* 64 N. Y. 541; *Commonwealth* v. *Union Pac. R. Co.,* 214 Ky. 339 [283 S. W. 119, 49 A. L. R. 1091]; 2 Cooley, Taxation, 4th ed., pp. 978, 982; 61 Cor. Jur., pp. 224, 241; 26 R. C. L., pp. 278, 279.) Furthermore, section 3628 of the Political Code seeks to state the rule of permanent situation as between rival taxing powers when tangible personal property has been removed from the locale of the owner's domicile to another county or district within the state. (*People* v. *Niles,* 35 Cal. 282; *City of Oakland* v. *Whipple,* 39 Cal. 112; *Rosasco* v. *County of Tuolumne,* 143 Cal. 430 [77 Pac. 148]; 24 Cal. Jur., pp. 112, 119.)

█ The taxation in the state of the owner's domicile of tangible personal property which has been permanently removed therefrom is a violation of the due process clause of the federal Constitution. (*Union Refrigerator Transit Co.* v. *Kentucky,* 199 U. S. 194 [26 Sup. Ct. 36, 50 L. Ed. 150, 4 Ann. Cas. 493]; *Frick* v. *Pennsylvania, supra; Johnson Oil Co.* v. *Oklahoma,* 290 U. S. 158, 161 [54 Sup. Ct. 152, 78 L. Ed. 238]; 2 Cooley, Taxation, 4th ed., p. 975 et seq.)

The plaintiff attempts to justify its contention that the removal of a portion of its stock of jewelry to Hawaii was for a permanent purpose, namely, for exhibit and sale, and not temporarily for the purpose of tax evasion, by analogizing the factual situation to previous similar instances of seasonal exhibits and displays for purposes of advertising, sale and the like, irrespective of the tax period, held in Chandler, Arizona; Palm Beach, Florida; in the territory of Hawaii in 1934, and in Palm Springs, Del Monte and Santa Barbara in this state. The analogy is not helpful in determining whether the removal was permanent. █ Notwithstanding the motive of evasion, if the goods otherwise were transported to Hawaii for a temporary purpose and such temporary removal did not destroy the permanency of the situs in this state, it would follow that similar excursions in other instances likewise would effect no interruption of the permanency of the situs in Los Angeles County.

The defendants contend that the present case is governed, in part at least, by decisions holding that the board of supervisors has the power to inquire into assertedly colorable transactions, for the purpose of preventing tax evasion. The defendants cite *Whiting Finance Co.* v. *Hopkins,* 199 Cal. 428, 435 [249 Pac. 853], *Whiting Finance Co.* v. *Hopkins,* 115 Cal. App. 756 [2 Pac. (2d) 461] ; *Automobile Acceptance Corp.* v. *Hopkins,* 121 Cal. App. 168 [8 Pac. (2d) 509], and similar decisions holding that the power to tax may be applied to taxable assets temporarily converted into tax exempt securities solely for the purpose of tax evasion. (See, also, *Mitchell* v. *Board of Commissioners,* 91 U. S. 206 [23 L. Ed. 302] ; *Superior Oil Co.* v. *Mississippi,* 280 U. S. 390 [50 Sup. Ct. 169, 74 L. Ed. 504] ; *Boessow* v. *Johnson,* 10 Cal. App. (2d) 578 [52 Pac. (2d) 505] ; *Helvering* v. *Gregory,* 69 Fed. (2d) 809 ; 61 Cor. Jur., p. 173.) The principles involved in such cases, however, are inapplicable here. ██ There is no duty to maintain property permanently in a jurisdiction where it will be subject to the taxing power, but it may be removed to a nontaxing jurisdiction and escape the imposition of taxes if such removal be permanent. (*Selliger* v. *Kentucky,* 213 U. S. 200 [29 Sup. Ct. 449, 53 L. Ed. 761] ; *Commonwealth* v. *Solliger,* 126 Ky. 66 [98 S. W. 1040]. Cf. *Helvering* v. *Gregory,* 69 Fed. (2d) 809, 810 ; *Wyndmoor Building & Loan Assn.* v. *Power Building & Loan Assn.,* 121 Pa. Super. 236, [183 Atl. 367].) But if the removal is intended to be temporary only, obviously the purpose, if exclusively for tax reduction, fails, for the property remains taxable at its permanent situs. (*Buck* v. *Beach, supra.* Cf. *Helvering* v. *Gregory, supra.*)

No serious contention is made that the valuable stock of jewelry involved here was intended to be removed permanently to the territory of Hawaii. It is clear from the evidence that no hopes were entertained of consummating any sale while the merchandise was in Honolulu. The plaintiff's vice-president testified that the consummation of a sale of such valuable gems and jewelry is not the work of a day, a week, or a month, or even a year. It was definitely the intention of the plaintiff's officers to carry that portion of the stock to Honolulu, display it during a short period for purposes of advertising and making future contacts with wealthy potential customers, and then to return it to the general stock in Los

Angeles, all of which was done with the exception of the return of one bracelet which remained with a jeweler in Honolulu because of the possibility of its sale to a prospective customer. We entertain no doubt that under the decisions this amounted to no more than a temporary absence from home which was ineffective to defeat the imposition of the tax at the place of the permanent situs. As stated in *N. Y. Central Railroad* v. *Miller*, 202 U. S. 584, at 597 [26 Sup. Ct. 714, 50 L. Ed. 1155], ''Using the language of domicil, which now so frequently is applied to inanimate things, the state of origin remains the permanent situs of the property, notwithstanding its occasional excursions to foreign parts.'' (*People* v. *Feitner*, 32 Misc. 84, 66 N. Y. Supp. 179. Cf. *Standard Paving Co.* v. *County Board of Equalization*, 135 Okl. 15 [273 Pac. 201], and *Griggsry Const. Co.* v. *Freeman*, 108 La. 435, [32 So. 399, 58 L. R. A. 349].)

Cases such as *General Oil Co.* v. *Crain*, 209 U. S. 211 [28 Sup. Ct. 475, 52 L. Ed. 754] (see, also, *Carson Petroleum Co.* v. *Vial*, 279 U. S. 95 [49 Sup. Ct. 292, 73 L. Ed. 626]; *Minnesota* v. *Blasius*, 290 U. S. 1 [54 Sup. Ct. 34, 78 L. Ed. 131]; *Merchants' Transfer Co.* v. *Board of Review*, 128 Iowa, 732, [105 N. W. 211, 5 Ann. Cas. 1016, 2 L. R. A. (N. S.) 662]), wherein is involved the question whether goods in interstate commerce have come to a definite, even though temporary, stop or resting place so as to have become incorporated into the general mass or bulk of property in the state and therefore subject to its protection and taxing power, are not helpful in determining the character of the stay in Hawaii of the merchandise involved here. In those cases the temporary nature of the stop or rest was not governed, as it was here, by the intention to return the goods to the state of origin when the purpose of the excursion was completed, but there the property had permanently left the home state. In the same category is the case of *Brown* v. *Houston, supra,* relied on by the plaintiff. There the question was whether coal consigned from Pennsylvania to New Orleans for sale at the latter port was taxable there. It was held that it had come to a definite stop and had become a part of the general mass of property in the state of Louisiana so as to be subject to tax. There was nothing to distinguish it from goods belonging to citizens of the locality, as there was in the present case where any possible sale of the jewelry was purely incidental to the

purpose of display and return to the owner's domicile. The same comments dispose of the case of *Pittsburg etc. Coal Co.* v. *Bates, supra,* which was decided on the authority of *Brown* v. *Houston, supra.* There is nothing in the case of *Frick* v. *Pennsylvania, supra,* which supports the plaintiff's contention that the jewelry had acquired a permanent situs in Hawaii. In the Frick case the permanent situs of tangible personalty in another state was not disputed. The question for determination was whether it could be subjected to an inheritance transfer tax imposed by the state of the decedent's domicile when it had acquired a permanent situs elsewhere. It was held that the state could tax only so much of the personalty as was under its jurisdiction. In the present case the state's jurisdiction was not lost by virtue of the temporary excursion to the territory of Hawaii.

There is no merit in the contention that the assessment was void because it included the $5,000 ruby bracelet, which the plaintiff contends was nonassessable in Los Angeles County because it was left for sale in Hawaii. The same facts and intention control the taxability as to the bracelet as the other jewelry, all of which was taken to Hawaii for a temporary purpose. If later that purpose was changed, that fact may be controlling at the next tax date, but it did not change the status of the property on the tax date here involved.

The plaintiff argues that an affirmance of the judgment herein would be inconsistent with section 3638 of the Political Code providing that personal property consigned for sale to any person within this state is subject to tax. The facts disclose that the property was not consigned for sale to any person within the meaning of that section.

The findings of the court that the jewelry was taken to Hawaii for a limited period and that it never became a part of the wealth of that island are fully supported by the evidence and in turn support the judgment.

The judgment is affirmed.

Waste, C. J., Edmonds, J., Curtis, J., Langdon, J., Thompson, J., and Seawell, J., concurred.

Rehearing denied. Edmonds, J., voted for a rehearing.