[Civ. No. 45747. Second Dist., Div. One. Mar. 30, 1976.]

ICE CAPADES, INC., Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.

## COUNSEL

Sherwood M. Sullivan, Stephen H. Pettigrew and Hopkins & Carley for Plaintiff and Appellant.

John H. Larson, County Counsel, and Lawrence B. Launer, Deputy County Counsel, for Defendants and Respondents.

## OPINION

**THOMPSON, J.**—This is an appeal by a taxpayer from a judgment sustaining the imposition of an unapportioned county tax upon personal property of the taxpayer physically outside of the taxing county on the lien date because of its use in interstate commerce. We conclude that, to the extent the property had acquired a tax situs in a state other than California, the due process and commerce clauses of the United States Constitution preclude the imposition of tax without apportionment. We conclude, also, that the property here taxed had acquired a tax situs in New Jersey as well as in California. Accordingly, we reverse the judgment with directions that the trial court remand the matter to the Los Angeles Board of Tax Appeals for application of a formula of apportionment.

*Facts*

Ice Capades is a Delaware corporation which, during the tax years here involved, had its principal place of business in Los Angeles County. It is in the business of staging ice shows throughout the United States and Canada. Ice Capades produces two separate shows, each presented by its own touring company. The companies are designated "East Show" and "West Show." Each has its own stage equipment, props, and costumes. East Show plays the larger cities, while West Show performs in smaller communities. Ice Capades shows are designated editions with each edition being a new show. A new edition goes on tour annually. East Show performs the edition first. The same edition is performed the next year by West Show.

In the taxable years here involved, a new edition was planned at the Los Angeles headquarters of Ice Capades and its props, equipment, and costumes manufactured, purchased, and assembled during a period beginning in January and ending in May, June, or July. At the end of the period, the props, equipment, and costumes of East Show were shipped to a training headquarters maintained by Ice Capades in Atlantic City, New Jersey. From the time the property arrived until September, the cast of the East Show rehearsed the performance at the Atlantic City headquarters and prepared it for the tour. Commencing in September, the East Show went on tour through the United States, playing in ice arenas in the cities of the tour. The show was booked into the various arenas by contracts arranging the dates of performance at least one year in advance with some of the contracts being on a multiple year basis. Advance personnel arrived three to four weeks in advance of the show itself, and the show played periods of approximately one week in each city of its tour. The East Show generally played its final performance of the edition in Los Angeles. Its equipment, props, and costumes were then kept in the Los Angeles headquarters of Ice Capades where they were refurbished and made ready for use by the West Show in the next year.

The preceding year's props, equipment, and costumes of the East Show were shipped from Los Angeles to Duluth, Minnesota, the training headquarters of the West Show, arriving there in June or July. The performers of the West Show rehearsed it for 30 to 60 days at the Duluth headquarters. The show then commenced its tour, playing at ice arenas on dates contracted at least one year in advance, with some of the

contracts being on a multiple year basis. Advance personnel arrived in each city of the tour approximately four weeks in advance of the show itself, and the show played for approximately one week in each city. The West Show generally concluded its tour in Honolulu, Hawaii, in the spring of the year and its equipment, props, and costumes were shipped to the Los Angeles headquarters or scrapped. The used costumes and most of the equipment and props remained stored in Los Angeles. With minor exceptions, they were not reused.

Ice Capades maintained all office equipment necessary for its operation in New Jersey at its Atlantic City training headquarters throughout the year. The equipment was used during the training and rehearsal period of the East Show and then stored. During the training and rehearsal period, all of Ice Capades production staff and the majority of its administrative staff, except for its accounting department, moved to Atlantic City.

The Duluth training headquarters of the West Show was maintained in leased facilities in the Duluth Arena Auditorium. During the period the West Show was not being rehearsed, unspecified tools, sewing equipment, and the like were stored at the auditorium.

For the tax years 1966 through 1969, the County of Los Angeles included within the measure of personal property tax payable by Ice Capades the value of all of its personal property, including that on tour outside of the county on the tax lien date. Ice Capades exhausted its administrative remedies, claiming that only property within the county on the lien date was subject to tax. Its administrative claim having been disallowed, Ice Capades paid, under protest, the taxes claimed by the county. It filed its complaint in the case at bench to recover the taxes paid.

The trial court found that, in the tax years 1966 through 1969, Ice Capades had no intention permanently to remove the personal property used by its East and West Shows from Los Angeles County, that the property did not acquire a tax situs elsewhere, and that it retained its tax situs in Los Angeles. Accordingly, it concluded that Los Angeles County had properly assessed personal property tax measured by the value of the property. This appeal followed.

*Issues*

On this appeal, Ice Capades accepts the valuations of the property used by the county in assessing its tax. Ice Capades contends: (1) the county's assessment of an unapportioned tax measured by the value of the property violates the commerce and due process clauses of the United States Constitution; and (2) the tax was invalidly assessed to the extent that it was unapportioned to other counties in California.

*Constitutional Issues*

■ "[T]he Due Process Clause [does not] confine the domiciliary State's taxing power to such proportion of the value of the property being taxed as is equal to the fraction of the tax year which the property spends within the State's borders." (*Central R. Co.* v. *Pennsylvania* (1961) 370 U.S. 607, 612 [8 L.Ed.2d 720, 725, 82 S.Ct. 1297]; Note, *Domiciliary Jurisdiction to Tax Movable Tangibles Employed Outside the State,* 50 Cal.L.Rev. 890.) ■ "[T]he State of domicile retains jurisdiction to tax tangible personal property which has 'not acquired an actual situs elsewhere.'" (*Central R. Co.* v. *Pennsylvania, supra,* at pp. 611-612 [8 L.Ed.2d at p. 725].) ■ "If such property has had insufficient contact with States other than the owner's domicile to render any one of these jurisdictions a 'tax situs,' it is surely appropriate to presume that the domicile is the only State affording the 'opportunities, benefits, or protection' which due process demands as a prerequisite for taxation." (*Central R. Co.* v. *Pennsylvania, supra,* at p. 612 [8 L.Ed.2d at p. 725].) ■ "[T]he burden is on the taxpayer who contends that some portion of its total assets are [*sic*] beyond the reach of the taxing power of its domicile to prove that the same property may be similarly taxed in another jurisdiction." (*Central R. Co.* v. *Pennsylvania, supra,* at p. 613 [8 L.Ed.2d at p. 725].) ■ If the taxpayer establishes that its movable personal property has acquired a tax situs in a state or states other than the domicile of the taxpayer, a property tax imposed by the state of domicile satisfies the due process clause and is not an unconstitutional burden on interstate commerce only if the tax imposed by the state of domicile is apportioned to allocate to the domiciliary state only such property values as are not subject to the potential of taxation elsewhere. (*Standard Oil Co.* v. *Peck* (1951) 342 U.S. 382, 384-385 [96 L.Ed. 427, 430-431, 72 S.Ct. 309, 26 A.L.R.2d 1371]; Comment, *Federal Limitations on State Taxation of Interstate Business,* 75 Harv.L.Rev. 953, 983-984.)

Ice Capades, the taxpayer in the case at bench, concedes that it is a corporation domiciled in California. To prevail in its contention that its movable property physically absent from the County of Los Angeles on tax day is wholly or partially exempt from taxation by the county, it must thus establish that the absent property had acquired a tax situs in some other state or in a foreign country.

The issue of the quantum of contact of property and its owner with a state necessary to establish a tax situs has been much litigated, not always to a consistent result. (See e.g., Annot., Tangible Personalty—Situs for Taxation, 110 A.L.R.707.)[1] The issue is essentially one of fact to be determined by principles distilled from an overabundance of authority.

Length of time that property is in the nondomiciliary jurisdiction and the intent of its presence are significant to tax situs. Where personal property is moved from the domicile of its owner to another location with the intent that it remain there for a short period and then be moved elsewhere or returned to the place of the owner's domicile, the owner's domicile and not the place where the property is temporarily situated is its tax situs. (*Scandinavian Airlines System, Inc.* v. *County of Los Angeles* (1961) 56 Cal.2d 11 [14 Cal.Rptr. 25, 363 P.2d 25], cert. den. 368 U.S. 899 [7 L.Ed.2d 94, 82 S.Ct. 175], as characterized in *Sea-Land Service Inc.* v. *County of Alameda* (1974) 12 Cal.3d 772, 786 [117 Cal.Rptr. 448, 528 P.2d 56]; *Brock & Co.* v. *Board of Supervisors* (1937) 8 Cal.2d 286 [65 P.2d 791, 110 A.L.R. 700]; *In re Moss Trucking Company, Inc.* (1972) 16 N.C.App. 261 [191 S.E.2d 919]; *Dennis* v. *City of Waco* (Tex.Civ.App. 1969) 445 S.W.2d 56; *Nacogdoches Independent School Dist.* v. *McKinney* (Tex. 1974) 504 S.W. 832; *Wm. J. Kennedy & Sons, Inc.* v. *Town of Albany* (1975) 66 Wis.2d 447 [225 N.W.2d 624].) Conversely, where the property is moved from the owner's domicile to another state to remain there for an indefinite period or for a relatively long time, then the place where the property is physically located is its tax situs. (*Minnesota* v. *Blasius* (1933) 290 U.S. 1 [78 L.Ed. 131, 54 S.Ct. 34]; *Griggsby Construction Co.* v. *Freeman* (1902) 108 La. 435 [32 So. 399]; *Hamilton & Gleason Co.* v. *Emery County* (1930) 75 Utah 406 [285 P. 1006].)

The nature of the property owner's contact with the jurisdiction other than his domicile is similarly significant in the determination of

---

[1]Much inconsistency in the cases is more apparent than real. It is often attributable to a particular taxpayer's not having sustained its burden of proof.

whether his property temporarily present in the jurisdiction acquires a tax situs there. The nature of the contact is relevant to the "opportunities, benefits, or protection" which must be afforded by a state if it is to have power to tax. (*Ott* v. *Mississippi Barge Line* (1948) 336 U.S. 169, 174 [93 L.Ed. 585, 589-590, 69 S.Ct. 432]; *Central R. Co.* v. *Pennsylvania, supra,* 370 U.S. 607, 612 [8 L.Ed.2d 720, 725].) ▮ Thus, if the nondomiciliary owner habitually employs movable property in the jurisdiction for all or a greater part of the tax year, the property acquires a tax situs although any one item of the property mix may be present for only a short predetermined period. (*Pullman's Car Co.* v. *Pennsylvania* (1890) 141 U.S. 18 [35 L.Ed. 613, 11 S.Ct. 876]; *American Refrigerator Transit Co.* v. *Hall* (1898) 174 U.S. 70 [43 L.Ed. 899, 19 S.Ct. 599]; *Braniff Airways* v. *Nebraska Board* (1953) 347 U.S. 590 [98 L.Ed. 967, 74 S.Ct. 757]; *Sea-Land Service, Inc.* v. *County of Alameda, supra,* 12 Cal.3d 772, 778; Comment, *State Taxation of Moving Equipment Engaged in Interstate Commerce,* 15 Ala.L.Rev. 186, 189.)

In the case at bench, we deal with three categories of quantum of contact by Ice Capades and its property with states other than California. There is the short-term transitory contact with the cities in which the shows appear. There is the substantial contact with New Jersey where the East Show training headquarters is maintained on a permanent basis, and there is the contact with Minnesota where the Duluth training headquarters of the West Show is maintained for a portion of each year.

▮ The transitory contact with the cities in which Ice Capades plays is not sufficient to establish a tax situs. The Ice Capades property is present in those cities for a short, predetermined period of time with the intent that at the end of the predetermined period it will move on. ▮ ▮▮▮ On virtually identical facts, a circus was held not to have acquired a tax situs in a jurisdiction in which it was presenting its performance on the tax lien date. (*Robinson* v. *Longley* (1883) 18 Nev. 71 [1 P. 377].)[2]

▮ The presence in New Jersey is another matter. Property of the Ice Capades East Show is physically present in Atlantic City for months

---

[2]Focusing on the use of the phrase "habitually present" in such cases as *Sea-Land Service, Inc.* v. *County of Alameda, supra,* 12 Cal.3d 772, Ice Capades argues that its property is "habitually employed" and hence acquires a tax situs in all cities where its show regularly plays from year to year. The phrase, however, is used in a different context as a basis for tax situs. "Habitual employment" during the tax year of similar items of property requires that the aggregate of the property be considered in determining the contact with the jurisdiction. It is not, of itself, a basis of tax situs.

each year. When the East Show is on tour, substantial other property of the taxpayer remains present there in a permanent headquarters. Those facts establish as a matter of law that New Jersey has afforded "opportunities, benefits, or protection" of such substance as to fix its power to tax, and hence is a tax situs of Ice Capades property. ■■ ■■■■ The tax imposed by a California agency must thus be apportioned to exclude from the California measure values attributable to the New Jersey situs.[3]

■■ The presence in Minnesota presents a situation of a third character. While the West Show property is in Duluth for from one to two months each year, it is present with the expectation that it will move on. There is only very sketchy evidence of the nature of the Duluth headquarters between training periods. On those facts, either the inference of a sufficient presence for tax situs in Minnesota or a contrary inference of lack of sufficient presence is a reasonable one. In that situation, we must accept the conclusion drawn by the trial court. Here that conclusion is that Ice Capades failed to meet its burden of proof to establish a tax situs in Duluth.

### Apportionment

■■ Since the property of Ice Capades absent from California had acquired a tax situs in New Jersey so as to be subject to taxation in that state, the County of Los Angeles was limited in its power of taxation of the property to its value fairly apportioned to California. (*Standard Oil Co.* v. *Peck, supra,* 342 U.S. 382, 384-385 [96 L.Ed. 427, 430-431].) The development of a formula of apportionment is primarily the task of the authority imposing the tax. ■■ We suggest for the guidance of the trial court and the county tax authorities on remand that a formula will be valid if it apportions to the County of Los Angeles, as the domicile of Ice Capades, the proportion of the value of the property which the period of the tax year during which the property was not present in New Jersey bears to 365 days. (See *Johnson Oil Co.* v. *Oklahoma* (1933) 290 U.S. 158 [78 L.Ed. 238, 54 S.Ct. 152].)

[3]The county argues that the requirement of apportionment is limited to taxation of "instrumentalities of commerce" such as railroad cars, trucks, and shipping. Compelling authority holds to the contrary. (*International Paper Co.* v. *Massachusetts* (1917) 246 U.S. 135 [62 L.Ed. 624, 38 S.Ct. 292].)

## *Apportionment Within California*

 Citing *Zantop Air Transport, Inc.* v. *County of San Bernardino* (1966) 246 Cal.App.2d 433 [54 Cal.Rptr. 813], Ice Capades contends that the property tax imposed by the County of Los Angeles must be apportioned to remove from the tax measure values fairly attributable to other counties in California in which the property is "regularly" employed. The argument misses the mark.

 No constitutional issue of burden upon interstate commerce is present where the problem is determination of the taxing power of individual counties within a state. *Zantop Air Transport* requires, as a matter of state law, only that tax situs is a prerequisite to the power to impose a property tax. The county in which the tax situs is located has power to impose an unapportioned property tax although the property may be temporarily absent. (*Church* v. *City of Los Angeles* (1950) 96 Cal.App.2d 89, 91 [214 P.2d 550].) Here no county in California other than Los Angeles was the tax situs of the property in the years in question.

### *Disposition*

The judgment (order denying peremptory writ of mandate) is reversed. The trial court is directed to issue a peremptory writ of mandate remanding the matter to the Los Angeles County Board of Tax Appeals with instructions to apply a formula apportioning taxpayer's taxable property so as to reflect the tax situs of that property in New Jersey for portions of each of the relevant tax years.

Lillie, Acting P. J., and Hanson, J., concurred.

Petitions for a rehearing were denied April 29, 1976, and the petitions of all the parties for a hearing by the Supreme Court were denied May 26, 1976.