Filed 4/19/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| AIR 7, LLC, et al., | 2d Civil No. B323487 |
| Plaintiffs and Appellants, | (Super. Ct. No. 56-2020-00538859-CU-MC-VTA) |
| v. | (Ventura County) |
| COUNTY OF VENTURA, | |
| Defendant and Respondent. | |

The California Constitution requires taxable property be assessed in the county where it is situated. Here the County of Ventura imposed a tax on an aircraft that was permanently removed from California before the tax lien date of January 1 for tax year 2017. Because the aircraft was removed from California with the intent that removal be permanent, and the aircraft never returned to California during the 2017 tax year, we conclude the aircraft was not "situated" or "habitually situated" in California. The tax imposed on the aircraft violates California law irrespective of whether the aircraft was situated and taxed in another state.

Air 7, LLC and Peter J. Koral, as trustee of the Peter J. Koral Trust (collectively Air 7), appeal from the judgment

following a court trial. They contend the County of Ventura improperly imposed a property tax on an aircraft after it was permanently removed from California. We agree and reverse the judgment.

FACTUAL AND PROCEDURAL HISTORY

The facts are undisputed. Air 7, LLC, a Delaware limited liability company, and its owner, the Peter J. Koral Trust, owned a Gulfstream G-550 jet aircraft. Air 7's headquarters were located at the Camarillo Airport in Ventura County. Peter Koral was a resident of California.

Air 7 had been trying to sell the aircraft since approximately 2015. In 2016, it was stored in a hangar at the Camarillo Airport between flights. The aircraft was physically present in Ventura County for seven and a half months during 2016.

On December 9, 2016, Air 7 entered a listing and commission agreement to seek a buyer for the aircraft. On December 28, 2016, Air 7 moved the aircraft to the Hillsboro Airport in Oregon. Koral stated it was moved to Oregon because Air 7's advertising manager and sales office were located there, and the relocation was meant to be permanent. Koral did not intend for the aircraft to return to California and "never wanted to see that plane again, ever." The aircraft never returned to California while owned by Air 7.

Air 7 contracted to hangar the aircraft in Hillsboro from December 26, 2016, to December 31, 2017. Representatives of Air 7 stated it would be kept there until a buyer was found. The contract listed Air 7's principal place of business and billing address as Camarillo. The agreement could be terminated with 30 days' notice, and was terminated on January 21, 2017.

2

The aircraft remained in Hillsboro on January 1, 2017. Because there was a prospective buyer, on January 25 the aircraft was moved to a Gulfstream facility in Nevada for maintenance and inspection. On April 28, Air 7 agreed to sell the aircraft to Airtime LLC, located in Wisconsin. On May 7, the aircraft was flown to Illinois for additional maintenance and inspection. The sale was consummated and the aircraft was delivered to Airtime in Connecticut on July 31, 2017.

The Oregon Department of Aviation advised Air 7 it was not required to register the aircraft in Oregon because registration was only required if the aircraft was based there for 60 days. (Or. Rev. Stat. § 837.040.) Oregon does not tax general aircraft. (Or. Rev. Stat. § 308.558.) The aircraft was a "general aircraft" because it was privately owned and was not a commercial aircraft or air taxi. (*JetSuite, Inc. v. County of Los Angeles* (2017) 16 Cal.App.5th 10, 18-19 (*JetSuite*).) No property taxes were paid for the aircraft in any jurisdiction for tax year (fiscal year) 2017 (July 1, 2017, through June 30, 2018).

The County determined the situs of the aircraft to be Ventura County as of the tax lien date (tax situs date) of January 1, 2017, for the 2017 tax year. The County billed Air 7 for $240,671.84 in property taxes and bond assessments. The Ventura County Assessment Appeals Board denied Air 7's appeal. It found the aircraft was habitually situated in Ventura County on the January 1 tax lien date and Air 7 did not establish a situs elsewhere.

Air 7 sued the County for a refund of the taxes, statutory interest, and penalties the County had imposed. (Rev. & Tax.

Code, § 5140.)[1]  Following a court trial, the court found the aircraft was not permanently removed from Ventura County on the tax lien date because it had not established situs elsewhere. The trial court entered judgment for the County.

## DISCUSSION

Because the facts are undisputed, we review the interpretation of constitutional provisions and statutes de novo. (*Silicon Valley Taxpayers' Assn., Inc. v. Santa Clara County Open Space Authority* (2008) 44 Cal.4th 431, 448-449; *Farr v. County of Nevada* (2010) 187 Cal.App.4th 669, 679-680.)

*California tax provisions*

"All property is taxable and shall be assessed" based on "fair market value."  (Cal. Const., art. XIII, § 1.)  Taxable property is assessed, and tax liens attach, on January 1 each year for the following fiscal year (July 1 through June 30).  (Rev. & Tax. Code, §§ 75.6, 117, 401.3, 2192.)  "[T]he taxing agency's right to the taxes becomes fixed on the lien date of the fiscal year to which they relate."  (*California Computer Products, Inc. v. County of Orange* (1980) 107 Cal.App.3d 731, 736.)

"All property taxed by local government shall be assessed in the county, city, and district in which it is situated."  (Cal. Const., art. XIII, § 14.)  "The word 'situated' in this section refers not to mere physical presence on the lien date, but to the situs of property within the state necessary to give jurisdiction to tax."  (*Sea-Land Service, Inc. v. County of Alameda* (1974) 12 Cal.3d

---

[1] The County's brief states that a refund of $31,235.25 was issued on approximately November 22, 2019, and that this reduced the principal amount of tax owed to $218,793.11.  Air 7's briefs request a refund of the principal tax amount of $218,793.11, plus interest and penalties imposed.

4

772, 777, fn. 3 (*Sea-Land*).) "Annually, the assessor shall assess all the taxable property in his county . . . to the persons owning, claiming, possessing, or controlling it on the lien date." (Rev. & Tax. Code, § 405, subd. (a).) Aircraft is assessed in the county where it "is habitually situated." (Rev. & Tax. Code, § 5362.)

"California has adopted the due process-based definition of situs—either expressly or by failing to define a different definition." (*JetSuite*, *supra*, 16 Cal.App.5th at p. 19.) "A property has situs in a state when it is 'habitually employed' or 'habitually situated' in that state." (*Id.* at p. 18.)

The aircraft here was not physically present in California on the tax lien date. Although it had been "habitually situated" in California during 2016, there is no dispute (1) it was permanently removed from California before the lien date with the intent that removal be permanent, and (2) the aircraft never returned to California during the 2017 fiscal year. Thus, on January 1, 2017, the aircraft was not "situated" or "habitually situated" in California for purposes of Revenue and Taxation Code, section 5362, or article XIII, section 14, of the California Constitution.

The County contends it could still tax the aircraft because Air 7 had not cleared an additional hurdle: the establishment of a permanent situs in another state. This additional requirement is not supported by California law and impermissibly expands the county's authority to tax property. As discussed below, language superficially supporting the County's position pertains to contexts inapplicable here: the determination of whether absence from a state is permanent or temporary, or the apportionment of property that is physically located in both California and other states.

5

*Cases regarding temporary absence*

In determining whether personal property has been removed permanently or temporarily from the domicile of the owner, cases consider whether the property has acquired a tax situs in another state. But because it is undisputed the aircraft was permanently removed from California in December 2016, it is irrelevant where the aircraft was physically located after it left California.

An example of property being temporarily absent and not destroying situs in California is discussed in *Brock & Co. v. Board of Supervisors* (1937) 8 Cal.2d 286 (*Brock I*) and *Brock & Co. v. Board of Supervisors* (1939) 32 Cal.App.2d 550 (*Brock II*). There, a California jeweler shipped a portion of its inventory to the Territory of Hawaii shortly before the tax lien date each year.[2] The property was kept in Hawaii for approximately a month each time. (*Brock I*, at p. 288; *Brock II*, at pp. 551-553.) The purpose was to display the jewelry to potential buyers in the hopes of making a future sale, and, admittedly, to reduce the California property tax. (*Brock I*, at pp. 288-289; *Brock II*, at pp. 554-555.) No sales were made in Hawaii. (*Brock I*, at p. 288; *Brock II*, at p. 555.) Our Supreme Court concluded that Los Angeles County could tax the jewelry because it had not "acquired a permanent situs in Hawaii" but was "transported to Hawaii for a temporary purpose and such temporary removal did

---

[2] At that time, the tax lien date was the first Monday in March. (*People ex rel. Attorney General v. Reis* (1888) 76 Cal. 269, 277.) It was changed in 1967 to March 1, and in 1995 to January 1. (Rev. & Tax. Code, § 2192, as amended by Stats. 1967, ch. 818, § 5, and Stats. 1995, ch. 499, § 18.)

6

not destroy the permanency of the situs in this state." (*Brock I*, at pp. 293, 290.)

"There is no duty to maintain property permanently in a jurisdiction where it will be subject to the taxing power, but it may be removed to a nontaxing jurisdiction and escape the imposition of taxes *if such removal be permanent*." (*Brock I*, *supra*, 8 Cal.2d at p. 291, italics added.)  The removal was not permanent in *Brock*, but it is here.  *Brock I* and *II* do not hold that a county may tax property that was permanently removed from California before the tax lien date until it achieves tax situs in another state.  "The taxation in the state of the owner's domicile of tangible personal property which has been permanently removed therefrom is a violation of the due process clause of the federal Constitution." (*Brock I*, at p. 290.)  This principle prohibits taxation here.

*Apportionment cases*

This case is unlike those that apportion taxes for property situated in California that is also situated in other states.  "Due process prohibits a state from imposing a tax on *the full value* of personal property if other states *also have the right* to tax that property, and whether those states have that right turns on whether that property has 'situs' in those other states." (*JetSuite*, *supra*, 16 Cal.App.5th at p. 14, italics added.)

Under the " 'home port doctrine,' . . . the state where the property's owner was domiciled could tax *all* of the property, and other states or nations could tax *none* of it." (*JetSuite*, *supra*, 16 Cal.App.5th at p. 17.)  "These days, however, the home port doctrine is, 'if not dead, . . . functionally comatose.' " (*Ibid.*)  Since the development of apportioned taxes for ships and aircraft in interstate and foreign commerce, "no decision of the United

7

States Supreme Court has reverted to the anachronistic home-port doctrine." (*Sea-Land*, *supra*, 12 Cal.3d at pp. 786-787, fn. omitted.)

*JetSuite* concluded that California could tax the full value of aircraft because the plaintiff failed to show that other states in which the planes "touch[ed] down" acquired situs. (*JetSuite*, *supra*, 16 Cal.App.4th at pp. 14, 18-19.) But *JetSuite* assumed the planes had a situs in California. It did not hold that property permanently removed from California remained taxable until it attained a situs in another state.

In *Ice Capades, Inc. v. County of Los Angeles* (1976) 56 Cal.App.3d 745, the company's principal place of business was in Los Angeles, but its stage equipment, props, and costumes were used or stored in other states for part of the year. The court required apportionment of taxes with New Jersey, where the property was stored in the company's permanent facility for a portion of the year, but not with states where it was present for shorter periods. (*Id.* at pp. 754-755.) But unlike the case here, "Ice Capades had no intention permanently to remove the personal property . . . from Los Angeles County." (*Id.* at p. 751.)

Here, the aircraft left California before the tax lien date, never to return. California had no basis to tax the aircraft, whether it thereafter remained in other states long enough for them to tax it. Thus, taxation of the aircraft is not justified by its owner's domicile of Ventura County.

### Rule 205

The County relies in part on Board of Equalization rule 205 (Cal. Code Regs., tit. 18, § 205). It provides that in certain circumstances, property "has situs at the location where it is normally returned between uses or, if there is no such location, at

8

the principal place of business of the owner."  But rule 205 only applies to "property which moves from place to place *within this state*."  (*Sea-Land*, *supra*, 12 Cal.3d at p. 778, italics added.) Moreover, the rule "is merely interpretative of existing law, and is neither a statutory mandate nor all-encompassing in its description."  (*Ibid*., fn. omitted.)  Existing law does not support situs for property that has permanently left the state before the lien date.

*Due process*

The property tax assessment here is precluded, not only by the meaning of "situs" in the California Constitution and the Revenue and Taxation Code, but by the due process clause of the Fourteenth Amendment to the United States Constitution.

In *Delaware, L. & W.R. Co. v. Pennsylvania* (1905) 198 U.S. 341, the high court held that Pennsylvania could not tax coal permanently transported to other states for purposes of sale because it would constitute a taking of property without due process of law.  (*Id*. at pp. 356, 358.)  The coal had been removed from Pennsylvania "with no intention that it should ever return." (*Id*. at p. 360.)  The "transitory nature of this property" in the other states was not material.  (*Id*. at p. 356.)  "However temporary the stay of the coal might be in the particular foreign States where it was resting at the time of the appraisement, it was definitely and forever beyond the jurisdiction of Pennsylvania."  (*Ibid*.)

Similarly, in *Union Refrigerator Transit Co. v. Kentucky* (1905) 199 U.S. 194, the court concluded that Kentucky could not tax railroad cars located in other states.  (*Id*. at p. 211.)  "It is also essential to the validity of a tax that the property shall be within the territorial jurisdiction of the taxing power. . . . [N]o

9

adjudication should be necessary to establish so obvious a proposition as that property lying beyond the jurisdiction of a State is not a subject upon which her taxing power can be legitimately exercised." (*Id*. at p. 204.) *Union Refrigerator* was followed in *Brock I*: "The taxation in the state of the owner's domicile of tangible personal property which has been permanently removed therefrom is a violation of the due process clause of the federal Constitution." (*Brock I*, *supra*, 8 Cal.2d at p. 290.) As the high court stated in *Norfolk & W. R. Co. v. Missouri State Tax Comm'n* (1968) 390 U.S. 317, 325, "The taxation of property not located in the taxing State is constitutionally invalid, both because it imposes an illegitimate restraint on interstate commerce and because it denies to the taxpayer the process that is his due." (Fn. omitted.)

Taxation here is not supported by *Central R. Co. v. Pennsylvania* (1962) 370 U.S. 607, upon which the County relies. There, Pennsylvania imposed "an annual property tax on the total value of freight cars owned by the appellant, a Pennsylvania corporation, despite the fact that a considerable number of such cars spend a substantial portion of the tax year on the lines of other railroads located outside the State." (*Id*. at p. 608.) The court held that "tangible property for which *no* tax situs has been established elsewhere may be taxed to its full value by the owner's domicile." (*Id*. at p. 612.) But unlike the Pennsylvania statute that authorized a tax on property *owned by* a resident corporation, California taxes personal property *situated in* a California county, city, or district. (Cal. Const., art. XIII, § 14; Rev. & Tax. Code, §§ 405, subd. (a), 5362.) The fact that due process permitted Pennsylvania to tax property temporarily located in other states does not expand California provisions that

10

limit taxation to property situated in the state.

DISPOSITION

The judgment is reversed. The County shall refund to appellants the taxes, statutory interest thereon, and penalties imposed for the 2017 tax year. Appellants shall recover costs on appeal.

<u>CERTIFIED FOR PUBLICATION.</u>

BALTODANO, J.

We concur:

GILBERT, P. J.

YEGAN, J.

11

Ronda J. McKaig, Judge

Superior Court County of Ventura

_____

Ajalat, Polley, Ayoob, Matarese & Broege, Richard J. Ayoob, Gregory R. Broege and Andrew W. Bodeau for Plaintiffs and Appellants.

Tiffany N. North, County Counsel, Brett B. McMurdo, Assistant County Counsel, for Defendant and Respondent.